UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————

CAITLIN MAHONEY,

           **Plaintiff,**

       - against -

AMEKK CORP. d/b/a CYPRUS AVENUE,
A&O CORP. d/b/a BLACK SHEEP PUB,
52 5th AVENUE CORP.,
ANTHONY McERLAIN, individually; and
ADAM SMITH, individually.

           **Defendants.**

—————————————————————

Index No. cv-14-4131

**<u>AMENDED COMPLAINT</u>**

Plaintiff, **CAITLIN MAHONEY**, through her attorneys, Gail I. Auster & Associates,

P.C., as and for her Complaint, alleges as follows:

<u>**Preliminary Statement**</u>

1.     This action is brought to recover minimum wages, unpaid overtime, "spread of

hours" compensation and unlawfully withheld tips earned by Plaintiff during the period that she

worked for Defendants, as well as statutory damages pursuant to the Fair Labor Standards Act

("FLSA") 29 U.S.C. § 201, *et seq*., ("FLSA"), and the New York Labor Law § 190, *et seq*.,

("NYLL"), specifically including The Wage Theft Prevention Act, NYLL § 195, and the

Hospitality Industry Wage Order, New York's Compilation of Codes, Rules and Regulations

("NYCRR") tit. 12, § 146.

2.     This action is also brought to remedy retaliation in violation of FLSA 29 U.S.C. §

201, *et seq*. & NYLL § 190, *et seq*.

1

3.     Defendants' actions were unlawful and Plaintiff brings this action for declaratory and injunctive relief, back pay, compensatory damages, liquidated damages, attorneys' fees, interest, and other appropriate equitable relief.

### Jurisdiction and Venue

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, and pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and § 1391(b) in that the state law claims have a common nucleus of operative facts with the federal claims.

5.     This action involves a question of federal law.

6.     Venue is proper in this District because the transactions at issue occurred in this District.

**7.**     Plaintiff has served a copy of this Complaint on the Defendants and upon the New York State Attorney General.

### The Parties

8.     Plaintiff Caitlin Mahoney ("Plaintiff") resided in the State of New York, County of Kings at all times relevant hereto.

9.     Defendant Amekk Corp. d/b/a Cyprus Avenue ("Cyprus Avenue") is domiciled in the State of New York, County of Kings, with its principal place of business at 52 5th Avenue, Brooklyn, NY. It is a bar engaged in the food and beverage service business.

10.     Defendant A & O Corp. d/b/a Black Sheep Pub ("Black Sheep Pub") is domiciled in the State of New York, County of Kings, with its principal place of business at 428 Bergen Street, Brooklyn, NY. It is a bar engaged in the food and beverage service business.

11.    Defendant 52 5th Avenue Corp. is incorporated in the State of New York and domiciled in the State of New York, County of Kings, with its principal place of business at 52 5th Avenue, Brooklyn, NY. It functions, *inter alia*, as a payroll company, and the checks Plaintiff received as wages and/or tips were drawn upon Defendant 52 5th Avenue Corp.'s bank accounts.

12.    Upon information and belief, at all times relevant, Defendant Anthony McErlain was and is Chief Executive Officer and principal shareholder and/or one of the top ten shareholders of all corporate defendants, and resided, and is presently residing in the State of New York, County of Kings., at 200 21st Street, #4A, Brooklyn, N.Y. 11232.

13.    At all times relevant, Defendant McErlain, along with Defendant Adam Smith, formulated, determined and enforced labor relations policy and procedures at Defendant s Cyprus Avenue bar and Black Sheep Pub.

14.    Upon information and belief, Defendant Smith has an ownership interest in Cyprus Avenue bar and/or Black Sheep Pub and/or the other corporate Defendants, and/or was one of the top 10 shareholders of one or more of the corporate Defendants, and resided and presently resides in the State of New York, County of Kings at 383 Clinton Street, #4D, Brooklyn, N.Y. 11231.

15.    At all times relevant, Defendant Smith managed the daily operations of Cypress Avenue bar and Black Sheep Pub.

16.    At all times relevant, Plaintiff was an "employee" within the meaning of the FLSA and the NYLL.

17.    At all times relevant, Plaintiff was a "tipped employee" within the meaning of the FLSA, the NYLL and the Hospitality Wage Order, 12 NYCRR § 146.

3

18.    At all times relevant, Defendants, in their corporate and/or individual capacities, were "employers" within the meaning of the FLSA and the NYLL.

19.    Upon information and belief, Plaintiff was jointly employed by all Defendants.

20.    At all times relevant, Defendants had supervisory authority over Plaintiff.

21.    At all times relevant, Defendants did, and continue to do, substantial business in New York and engage in commerce or the production of goods for commerce within the meaning of the FLSA.

<u>**Statement of Facts**</u>

22.    Plaintiff was hired by Defendants on or about November 1, 2014, as a bartender.

23.    In her position of bartender, Plaintiff performed the manual work of preparing and serving drinks at the Cyprus Avenue bar, and completed her end-of-shift duties at Black Sheep Pub.

24.    Plaintiff regularly worked Tuesdays from 3:30P.M. – 2:00A.M. (10.5 hours), Wednesdays from 3:30P.M. – 2:00A.M. (10.5 hours), Saturdays from 11:30A.M. – 6:00P.M. (6.5 hours), and Sundays from 11:30A.M. – 2:00A.M. (14.5 hours), ("shifts") for a total of 42 hours per week.

25.    Defendants did not utilize a time clock or other method by which employees could clock in and out or otherwise record their hours worked.

26.    Plaintiff never observed Defendants tracking her hours in any manner, either manually or electronically.

27.    Plaintiff was never given any meal or rest breaks during any of her shifts.

28.    Plaintiff's primary duties did not involve the exercise of discretion or independent judgment.

29.     Plaintiff had no managerial duties or managerial authority.

30.     Plaintiff did not direct the work of other employees.

31.     Plaintiff did not perform any office work on Defendants' behalf.

32.     Plaintiff did not formulate or make any decisions concerning Defendants' standard practices or operating procedures.

33.     Plaintiff was not authorized to deviate from Defendants' standard practices and procedures.

34.     Defendant McErlain did the hiring and firing at Cyprus Avenue Bar and Black Sheep Pub.

35.     Defendant McErlain unilaterally determined the rate and manner in which employees of Cyprus Avenue Bar and Black Sheep Pub were compensated.

36.     Defendants McErlain and Smith supervised and controlled employee work schedules and conditions of employment.

37.     Defendants McErlain and Smith had significant decision-making authority and maintained operational control of Cyprus Avenue Bar and Black Sheep Pub.


Payment "Off the Books"

38.     Defendants initially told Plaintiff that they would give her an IRS form W-2 and demanded her passport and social security number for I-9, payroll and accounting purposes.

39.     However, Defendants always paid Plaintiff "off the books" to avoid the expense of providing her with payroll benefits such as unemployment compensation, workers' compensation and social security benefits.

40.     Defendants twice paid Plaintiff in handwritten checks payable by "52 5th Avenue Corp.," first in the amount of $293.00 on January 2, 2014, and later in the amount of $575.00 on March 5, 2014; Defendant Adam Smith, who was both the Cyprus Avenue bar manager and also the Black Sheep Pub manager handwrote "Wages 12/9 – 12/15" on the memo line of the latter check. Upon information and belief, Defendant Smith signed both of these checks.

Withholding Charged Tips

41.     Plaintiff never received her tips that were paid by customers through a charge on their credit cards ("charged tips") on any set payment schedule, recurring pay period or regular payday.

42.     Defendants always appropriated and withheld Plaintiff's charged credit card tips, occasionally paying her arbitrary sums of cash, which Defendants claimed was a mix of "shift pay" and credit card tips, minus "taxes."

43.     During the period of her employment, Defendants failed to pay Plaintiff a substantial portion of her charged tips.

No Regular Payday

44.     Defendants paid Plaintiff undifferentiated cash payments, referred to in paragraphs 41-44, *infra*, at Defendants' own convenience and discretion, regardless of any applicable pay period.

45.     Plaintiff had no regular payday while she was employed by Defendants.

46.     These undifferentiated cash payments totaled substantially less than Plaintiff had earned while employed by Defendants.

6

47.     Between November 1, 2013 and March 31, 2014 – the entire period of Plaintiff's employment by Defendants – Defendants paid Plaintiff on irregular and sporadic occasions.

48.     On more than one occasion, Defendants paid Plaintiff an amount under $300.00 after several weeks' worth of unpaid charged tips and wages.

49.     Plaintiff complained to Defendant McErlain and Defendant Smith that she had not been paid the full amount of her earned wages and charged tips, to no avail.

No Wage Statements or Notice of Pay Rate, Pay Schedule or Tip Credit

50.     Defendants never provided Plaintiff with any wage statements.

51.     Defendants never provided Plaintiff with any breakdown of tips and wages.

52.     Defendants never provided Plaintiff with any wage or hour information regarding any payments made to Plaintiff.

53.     Plaintiff asked Defendants to provide an explanation for how her wages were computed.

54.     Defendants failed and refused to provide any explanation for how Plaintiff's wages were computed.

55.     Plaintiff was never given any written notice of her wage rate or pay schedule.

56.     Defendants never provided Plaintiff with any information about a "tip credit" or any notice of tip credit application.

57.     Defendants stated to Plaintiff that "taxes were withheld" from these unexplained, intermittent cash payments, but never provided her with an IRS form W-2, which should have reflected such tax withholding.

Withholding Wages

58.     Defendants did not pay Plaintiff an hourly wage.

59.     In lieu of hourly wages, Defendants initially promised Plaintiff a flat "shift pay" of $30 for a single shift and $70 for a double shift.

60.     Defendants would occasionally pay Plaintiff small amounts of cash far short of the New York State minimum wage and/or her tips paid by credit card.

61.     Defendants failed to pay any overtime pay for hours worked in excess of 40 hours per week.

62.     Defendants failed to pay Plaintiff any additional pay for those days in which she worked a "spread of hours" in excess of ten hours.

63.     Plaintiff left her employment on March 31, 2014, when an intoxicated patron of Black Sheep Pub next door, to whom Plaintiff had not served any drinks, assaulted her and bit her, causing serious bodily injury.

64.     At the time that Plaintiff left her employment with Defendants, Defendants owed her substantial sums for unpaid wages.

65.     On April 2, 2014, Defendant McErlain admitted in writing that Plaintiff was owed unpaid wages by Defendants.

66.     At this time, Plaintiff was in the hospital being treated for the injuries she received when being assaulted by a customer on March 31, 2014.

Retaliation

67.     On or about April 2, 2014, Plaintiff's boyfriend went to Cyprus Avenue bar and collected $1,000.00 cash on Plaintiff's behalf from Defendant Smith toward the balance of unpaid wages and charged tips she was owed.

68.     On or about May 5, 2014, Defendant McErlain called Plaintiff and left a voice message wherein he expressly admitted to owing Plaintiff approximately $3,000.00 worth of additional charged tips and wages and asked her to "come get what you're owed" and further stated that he did not like "hanging onto money that belongs to someone else."

69.     Plaintiff replied to Defendant McErlain via text and repeatedly attempted to schedule a time for them to meet to collect monies for unpaid wages and credit card tips owed to her, albeit the amount that McErlain admitted that plaintiff was owed was far below the actual amount owed to Plaintiff for earned and unpaid wages and tips.

70.     On or about May 8, 2014, after learning Plaintiff had consulted an attorney regarding this matter, Defendant McErlain sent Plaintiff a text message expressing anger at her for "sueing [sic] the bar" and thereafter failed and refused to pay her any part of the balance of her earned tips and wages.

71.     To date, Defendants have failed and refused to pay Plaintiff the balance her earned tips and wages, including but not limited to pay equal to the minimum wage rate for hours worked, overtime worked, charged tips, spread-of-hours and other wages, or to provide any wage statements or payroll statements, or indeed any record of when these amounts accrued and/or how they were calculated.

72.     Defendants have failed to keep required records or to provide Plaintiff with any records of her wages and/or charged tips during any period of her employment.

73.    Defendants' unlawful actions were a policy and/or plan implemented at Defendant McErlain's businesses Cyprus Avenue and Black Sheep Pub.

74.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer loss of income.

## FIRST CLAIM
### (Failure to Pay Minimum Wage – FLSA)

75.    Plaintiff repeats, realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

76.    The federal minimum wage under 29 U.S.C. § 206 is $7.25 per hour, or $2.13 per hour for tipped food and beverage workers.

77.    29 U.S.C. § 203(m) requires employers to provide employees with certain notice and information prior to applying a tip credit to offset employees' hourly wages.

78.    Defendants were not eligible to apply a tip credit to Plaintiff's wages under the FLSA because Defendants failed the following requirements under FLSA and 29 U.S.C. § 203(m) that would have allowed them to apply a tip credit:

    a)    Defendants failed to inform Plaintiff of the statutory requirements applicable to the tip credit;

    b)    Defendants failed to inform Plaintiff of the amount to be claimed as a tip credit against her wages;

    c)    Defendants failed to provide Plaintiff with any wage statements specifying the amount of tip credit deducted from her wages;

    d)    Defendants failed to maintain daily records of tips received by tipped employees; and

    e)    Defendants failed to treat Plaintiff's charged tips as her sole property and unlawfully redistributed all or part of Plaintiff's charged credit card tips by routinely

withholding them until such time as they could "catch up" with Plaintiff by doling out undifferentiated sums of cash.

79.    By failing to meet the requirements set forth in paragraph 80 above, Defendants were not eligible to apply any tip credit and therefore the federal minimum wage of $7.25 per hour should have been paid to Plaintiff.

80.    Moreover, by promising to pay Plaintiff $30 for a single shift and $70 for a double shift, Defendants promised to pay an amount that falls below the federal hourly minimum wage; however, by failing to pay even the promised amount, Defendants have failed to pay Plaintiff any set hourly wage whatsoever.

81.    Defendants wilfully violated the FLSA because they knew or should have known of their obligation to comply with federal law by paying the federal minimum wage; Defendants have acted with reckless disregard for Plaintiff's right to minimum wages under the FLSA.

82.    Defendants' failure to comply with the FLSA and its regulations regarding minimum hourly wage caused Plaintiff to suffer loss of wages and interest thereon, in an exact amount to be determined, but no less than $6,546.75.

83.    By the foregoing acts and tangible employment actions, Defendants, through their managerial employees and/or agents, engaged in unlawful failure to pay minimum wage in violation of the FLSA, 29 U.S.C. § 206.

84.    Therefore, Defendants are liable to Plaintiff in the amount of her unpaid wages, plus an additional equal amount (100%) as liquidated damages, plus attorney's fees, prejudgment interest, costs and disbursements.

## SECOND CLAIM
### (Failure to Pay Minimum Wage – NYLL)

85.     Plaintiff repeats, realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

86.     The New York State minimum wage under NYLL § 652 is $8.00 per hour, or $5.65 per hour for tipped food and beverage workers.

87.     12 NYCRR §§ 137-2.1, 137-2.2, 146-1.3, 146-2.2 require employers to provide employees with certain notice and information prior to applying a tip credit to offset employees' hourly wages so that an employer may receive the benefit of the tip credit only if it notifies employees of its intent to take a tip credit, provides employees with regular wage statements, and maintains and preserves weekly payroll records.

88.     Defendants were not allowed to apply a tip credit to Plaintiff's wages under NYLL because Defendants failed to comply with the following requirements under NYLL and 12 NYCRR §§ 137-2.1, 137-2.2, 146-1.3, 146-2.2 which together would permit an employer to apply a tip credit:

a)     Defendants failed to provide Plaintiff with any notice of her hourly pay rate;

b)     Defendants failed to provide Plaintiff with any notice of her overtime pay rate;

c)     Defendants failed to notify Plaintiff of their intent to take a tip credit;

d)     Defendants failed to provide Plaintiff with any notice or information, legal, numerical or otherwise, regarding the application of a tip credit to her wages;

e)     Defendants failed to provide Plaintiff with any wage statements specifying the amount of tip credit deducted from her wages;

    f)      Defendants failed to maintain daily records of tips received by tipped employees;

    g)      Defendants failed to preserve payroll records;

    h)      Defendants failed to permit Plaintiff to retain the entirety of her tips, less the pro-rated portion of the tip taken by the credit card company; and

    i)      Defendants retained and withheld Plaintiff's charged credit card tips.

89.    By failing to meet the requirements set forth in Paragraph 90 above, Defendants were not eligible to apply any tip credit and therefore the New York state minimum wage of $8.00 per hour should have been paid to Plaintiff.

90.    By promising to pay Plaintiff $30 for a single shift and $70 for a double shift, Defendants promised an amount that falls below the New York State minimum wage; however, by failing to pay even the above promised amount, Defendants have failed to pay plaintiff any set hourly wage whatsoever.

91.    Defendants' failure to comply with the NYLL and its regulations regarding minimum hourly wage caused Plaintiff to suffer loss of wages, in an exact amount to be determined, but no less than $7,224.00.

92.    Defendants wilfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff the required minimum wage.

93.    Therefore, Defendant is liable to Plaintiff in the amount of her unpaid wages, plus an additional equal amount (100%) as liquidated damages, plus prejudgment interest, attorney's fees, costs and disbursements.

## **THIRD CLAIM**
### (Unlawful Deductions / Retention of Tips – FLSA)

94.     Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

95.     Plaintiff was a tipped employee pursuant to the FLSA.

96.     Notwithstanding that Plaintiff was a tipped employee, Defendants were not eligible to apply a tip credit to Plaintiff's wages under the FLSA because Defendants failed to comply with the statutory prerequisites under the FLSA and 29 U.S.C. § 203(m), as set forth in detail, *infra*.

97.     Defendants failed to treat Plaintiff's charged tips as her sole property and unlawfully redistributed all or part of Plaintiff's charged credit card tips by routinely withholding them and sporadically trying to "catch up" with Plaintiff by doling out undifferentiated sums of cash.

98.     Defendants' failure to comply with the FLSA and its regulations regarding unlawful retention of tips caused Plaintiff to suffer loss of earnings, in an exact amount to be determined, but no less than $5,000.00.

99.     Defendants' retention and expropriation of Plaintiff's credit card tips was willful because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff her tips without making illegal deductions or retaining such tips for their own use; Defendants have acted with reckless disregard for Plaintiff's right to keep her earned tips under the FLSA.

100.    Therefore, Defendant is liable to Plaintiff in the amount of her unpaid wages, plus an additional equal amount (100%) as liquidated damages, plus prejudgment interest, attorney's fees, costs and disbursements.

**FOURTH CLAIM**
**(Unlawful Deductions / Tip Appropriation – NYLL)**

101.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

102.    Plaintiff was a tipped employee pursuant to the NYLL.

103.    Notwithstanding that Plaintiff was a tipped employee, Defendants were not eligible to apply a tip credit to Plaintiff's wages under the NYLL because Defendants failed to comply with the statutory prerequisites NYLL and 12 NYCRR §§ 137-2.1, 137-2.2, 146-1.3, 146-2.2, as set forth in detail, *infra.*

104.    Defendants, as employers covered under the NYLL, were required to pay Plaintiff the applicable minimum wage of $8.00 per hour.

105.    NYLL § 193 prohibits employers from making any deductions from an employee's wages except for those permitted by law.

106.    NYLL § 196-d prohibits any employer or its agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity purported to be a gratuity for an employee.

107.    Defendants withheld and retained Plaintiff's charged credit card tips, effectively requiring Plaintiff to share tips with the house, including non-service employees, such as managers, as well as non-employees, such as owners including Defendants McErlain and Smith.

108.    Defendants' failure to comply with the NYLL and its regulations regarding unlawful retention of tips caused Plaintiff to suffer loss of earnings, in an exact amount to be determined, but no less than $5,000.00

109.    By the foregoing actions, Defendants through their managerial employees and agents, as Plaintiff's employer unlawfully retained and expropriated Plaintiff's charged credit card gratuities.

110.    Defendant's retention and expropriation of Plaintiff's credit card tips was willful because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff her tips without making illegal deductions or retaining such tips for their own use; Defendants have acted with reckless disregard for Plaintiff's right to her earned tips and for Defendants' corresponding obligations under state labor law.

111.    Therefore, Defendants are liable to Plaintiff in the amount of her unpaid wages, plus an additional equal amount (100%) as liquidated damages, plus prejudgment interest, attorney's fees, costs and disbursements.

**FIFTH CLAIM**
**(Failure to Pay Overtime – FLSA)**

112.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

113.    Plaintiff was a "non-exempt" employee within the meaning of the provisions and protections afforded by the FLSA.

114.    29 U.S.C. § 207(a)(1) entitles non-exempt employees premium overtime wages of time and a half for work in each workweek during an employee performs in excess of 40 hours.

115.    From on or about November 1, 2013 through March 31, 2014, Plaintiff worked 42 hours each week.

116.    From on or about November 1, 2013 through March 31, 2014, Defendants violated 29 U.S.C. § 207 by failing to pay Plaintiff premium overtime wages of time and a half.

117.    Defendants' failure to comply with the FLSA's overtime provisions caused Plaintiff to suffer loss of overtime wages at the rate of time and a half, in an exact amount to be determined, but no less than $467.63.

118.    Therefore, Defendant is liable to Plaintiff in the amount of her unpaid overtime wages.

119.    29 U.S.C. § 216(b) entitles Plaintiff to be paid 100% liquidated damages if she has been denied appropriate minimum wages and overtime.

120.    Defendant's failure to pay the required federal overtime was willful within the meaning of 29 U.S.C § 255 because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff overtime wages for all hours she performed in excess of 40 hours in a single work week; Defendants have acted with reckless disregard for Plaintiff's right to minimum wage and overtime compensation under the FLSA, and for Defendants' corresponding obligations under federal law.

121.    Therefore, Defendants are liable to the Plaintiff in the amount of her unpaid overtime compensation, plus an additional equal amount (100%) as liquidated damages.

## SIXTH CLAIM
### (Failure to Pay Overtime – NYCRR)

122.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

123.    Plaintiff was a "non-exempt" employee within the meaning of the provisions and protections afforded by the NYLL and NYCRR.

124.    New York Labor Law, specifically 12 NYCRR §§ 137-1.3, 142-2.2 and 146-1.4, unequivocally states that non-exempt employees who work more than 40 hours in a workweek

are entitled to receive not less than one and one-half the regular rate of compensation for all hours worked in excess of 40 per workweek.

125.    Pursuant to 12 NYCRR. §§ 137-1.3, 142-2.2 and 146-1.4, this overtime rate must be calculated based on an employee's regular rate of pay before the tip credit, i.e. a minimum of $8.00 per hour in New York.

126.    From on or about November 1, 2013 through March 31, 2014, Plaintiff worked 42 hours each week.

127.    Defendants failed to pay Plaintiff the required overtime wages during those workweeks in which she worked more than 40 hours.

128.    By failing and refusing to pay wages that were due to Plaintiff at the rate of time and a half of the regular hourly rate at which she was employed, every week from on or about November 1, 2013 through March 31, 2014, Defendants have violated the labor laws of the State of New York and specifically including but not limited to Article 19, §§ 650 *et seq.*, and specifically § 650 of the Minimum Wage Act of the State of New York, and NYCRR, tit. 12, § 142-2.2.

129.    Defendants' failure to comply with the NYLL and NYCRR's overtime provisions caused Plaintiff to suffer loss of wages and applicable interest thereon, in an exact amount to be determined, but no less than $467.63.

130.    Therefore, Defendant is liable to Plaintiff in the amount of her unpaid overtime wages.

131.    NYLL § 198(1-a) and 663(1) entitle Plaintiffs to be paid 100% liquidated damages if she has been denied appropriate minimum wages and overtime.

132.    Defendant's failure to pay the required state overtime was willful because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff overtime wages for all hours she performed in excess of 40 hours in a single work week; Defendants have acted with reckless disregard for Plaintiff's right to overtime wages and for Defendants' state minimum wage and overtime obligations.

133.    Therefore, Defendant is liable to Plaintiff in the amount of her unpaid overtime compensation, plus an additional equal amount (100%) as liquidated damages.

## SEVENTH CLAIM
### ("Spread of Hours" Violation – NYLL & NYCRR)

134.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

135.    The "spread of hours" provision of NYLL § 652 and 12 NYCRR § 142–2.4 entitles employees to one additional hour of pay at the minimum hourly wage for each day they worked over ten hours, including breaks.

136.    Pursuant to 12 NYCRR §146-1.6(d), this "spread of hours" pay must be calculated based on the employee's full wage rate, before the tip credit, i.e. a minimum of $8.00 per hour in New York.

137.    NYLL § 198(1-a) and 663(1) entitle plaintiffs to 100% liquidated damages if they have been denied "spread of hours" compensation.

138.    Plaintiff routinely worked more than ten hours in a single work day, with no breaks, at least three days per week, from November 1, 2013 through March 31, 2014.

139.    Defendants failed to pay Plaintiff additional wages to which she was entitled for "spread of hours."

140.    Defendants failed to provide Plaintiff with any record or pay stub reflecting any "spread of hours" pay.

141.    Defendants' failure to comply with the NYLL's "spread of hours" provisions caused Plaintiff to suffer loss of wages, in an exact amount to be determined, but no less than $516.00.

142.    Defendants' failure to pay the required "spread of hours" compensation was willful because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff "spread of hours" compensation; Defendants have acted with reckless disregard for Plaintiff's right to "spread of hours" compensation under the NYLL & NYCRR, and for Defendant's corresponding obligations under New York state law.

143.    Therefore, Defendants are liable to Plaintiff in the amount of her unpaid "spread of hours" wages, plus an additional equal amount (100%) as liquidated damages, plus prejudgment interest, attorney's fees, costs and disbursements.


### EIGHTH CLAIM
**(Failure to Provide Wage Statements – NYLL: Wage Theft Prevention Act)**

144.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

145.    The Wage Theft Prevention Act, NYLL § 195.3, and The Hospitality Wage Order, 12 NYCRR § 146-2.3, require employers to provide each employee with a statement or "pay stub," with every payment of wages; such pay stub must list hours worked, rates paid, credits claimed (e.g. tip credit), deductions, net wages and the beginning and ending date for the period covered by that payment.

146.    Defendants failed to provide Plaintiff with wage statements or pay stubs of any kind.

147.    Therefore, Defendants are liable to Plaintiff for statutory damages in the amount of $2,500 pursuant to the Wage Theft Prevention Act.

## NINTH CLAIM
### (Failure to Provide Notice of Wage Rates and Payday – NYLL: Wage Theft Prevention Act)

148.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

149.    The Wage Theft Prevention Act, NYLL § 195.1, and The Hospitality Wage Order, 12 NYCRR § 146-2.2, require that prior to the start of employment, employers must give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

150.    Defendants failed to provide such notice, prior to the start of Plaintiff's employment or indeed at any other time.

151.    Therefore, Defendant is liable to Plaintiff for statutory damages in the amount of $2,500 pursuant to the Wage Theft Prevention Act.

## TENTH CLAIM
### (Failure to Keep Employee Records – NYLL & NYCRR)

152.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

153.    Defendants failed to keep employee-specific records documenting, *inter alia*, actual hours worked in each week, in violation of NYLL § 661 and 12 NYCRR § 142-2.6.


## ELEVENTH CLAIM
### (Failure to Pay within the Required Time Frame – NYLL)

154.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

155.    NYLL § 191.1(i) requires that employers must pay manual workers their wages on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned.

156.    Defendants failed to pay Plaintiff her wages on a weekly basis as described above.

157.    Therefore, Defendants are liable to Plaintiff for damages in the amount of nine percent pre judgment interest per annum as applied to the sum of all wages not paid within the above specified timeframe.


## TWELFTH CLAIM
### (Failure to Pay an Hourly Rate – NYLL Hospitality Wage Order)

158.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

159.    NYLL § 195 and The Hospitality Wage Order, NYCRR § 146-2.5 require that employees other than commissioned salespersons must be paid hourly rates of pay; employers may not pay employees on a daily, weekly or other non-hourly rate basis.

160.    Instead of the required hourly pay rate, Defendants promised Plaintiff a lump-sum "shift pay" of $30.00 for each shift worked and $70.00 for each double-shift worked, regardless of the actual number of hours worked.

161.    This "shift pay" was less than the minimum hourly wage required by New York State Law.

162.    Defendants' policy of paying per shift rather than the required hourly rate was willful because Defendants were aware or should have been aware of their legal obligation to pay Plaintiff an hourly wage; Defendants have acted with reckless disregard for Plaintiff's right to an hourly wage under the NYLL and for Defendants' corresponding obligations under New York State labor law and NYCRR.

163.    Therefore, Defendants are liable to Plaintiff for damages in the amount of nine percent pre judgment interest per annum as applied to the sum of all wages not paid at the required hourly rate.

## THIRTEENTH CLAIM
### (Retaliation – NYLL)

164.    Plaintiff realleges and incorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

165.    NYLL § 215 provides:

"1. (a) No employer or his or her agent, or the office or agent of any corporation, partnership or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or…(ii) because such employer or person believes that such employee has made a complaint to his or her employer…that the employer has violated an provision of this chapter.

166.    Plaintiff engaged in the protected activities of, *inter alia*, objecting to the aforementioned labor law violations to Defendant McErlain and his agents by demanding that her wages and tips be paid in full, and by consulting and retaining legal counsel to represent her in these claims and assist her in vindicating her rights under state and federal labor law.

167.    Because Plaintiff engaged in aforementioned protected activities, she suffered an adverse employment action in the form of Defendant McErlain's refusal to pay the outstanding balance Plaintiff's earned wages and tips, after initially inviting Plaintiff to "come get what [she is] owed."

168.    Thus, Defendants retaliated against Plaintiff by permanently withholding and refusing to pay her at least 12 weeks' worth of her earned tips and wages.

169.    The employment action of withholding wages or earned credit card tips is materially adverse in that it well might have dissuaded a reasonable worker from making or supporting charges under federal and/or state labor law.

170.    The aforementioned protected activity and adverse employment action are causally related in that Defendant rescinded his prior voice-mail offer to pay Plaintiff the balance of her earned wages in retaliatory response to Plaintiff's protected activities; Defendant clearly indicated this causal relationship by texting Plaintiff "I heard u were sueing [sic] bar…That's nice…" and thereafter refusing to meet with Plaintiff and/or pay her as previously promised. The above text is an express statement of retaliatory animus and provides "smoking gun" evidence of the causal connection between Plaintiff's protected activity and Defendants' adverse employment action.

171.    By taking an action adverse to the Plaintiff because of the Plaintiff's participation in a protected activity, Defendants have violated NYLL § 215(1)(a).

172.    Such violation was willful in that Defendants were aware or should have been aware of their legal obligation not to retaliate against Plaintiff for consulting an attorney about her rights under New York State labor law; Defendants have acted with reckless disregard for Plaintiff's rights against retaliation, and Defendants' their corresponding obligations under state labor law.

173.    Defendants are therefore subject to liquidated damages under NYLL § 198(1–a).

**WHEREFORE,** Plaintiff Caitlin Mahoney demands judgment as follows:

On all claims:

(a)    An order declaring that the acts and practices complained of herein are in violation of the FLSA and all applicable New York State Labor Laws;

(b)    An order declaring that the Defendants engaged in unlawful employment practices prohibited by the NYLL § 215 in that the Defendants retaliated against the Plaintiff for retaining legal counsel to help her oppose Defendants' unlawful employment practices and collect her rightful wages;

(c)    An order declaring that Defendants' violations of state and federal minimum wage protections were willful;

(d)    An order declaring that Defendants' violations of state and federal overtime wage protections were willful;

(e)    An order enjoining and permanently restraining these violations of the FLSA and all applicable New York State Laws; and

**On the First, Second Third and Fourth Claims:**

An award of unpaid wages, plus an additional equal amount (100%) as liquidated damages, plus attorney's fees, prejudgment interest, costs and disbursements.

**On the Fifth and Sixth Claims:**

An award of unpaid overtime compensation, plus an additional equal amount (100%) as liquidated damages.

**On the Seventh Claim:**

An award of statutory damages in the amount of $2,500 pursuant to the Wage Theft Prevention Act.

**On the Eighth Claim:**

An award of statutory damages in the amount of $2,500 pursuant to the Wage Theft Prevention Act.

**On the Ninth Claim:**

An award of statutory damages in the amount of $2,500 pursuant to the Wage Theft Prevention Act.

**On the Tenth Claim:**

An award of such relief as this court deems appropriate.

**On the Eleventh Claim:**

An award in the amount of nine percent pre judgment interest per annum as applied to the sum of all wages not paid within the above specified timeframe.

**On the Twelfth Claim:**

An award of nine percent pre judgment interest per annum as applied to the sum of all wages not paid at the required hourly rate.

**On the Thirteenth Claim:**

An award of liquidated damages pursuant to NYLL § 198(1–a).

Plus an order granting such other relief as this Court deems equitable, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action on all claims that are triable by a jury.

Dated: New York, New York
        September 23, 2014

Respectfully submitted,
LAW OFFICES OF GAIL I. AUSTER
& ASSOCIATES, P.C.

By: Gail I. Auster (GA8428)
17 Battery Place, Suite 711
New York, NY 10004
Telephone: 212.864.3461
Cell: 914.707.4000
Facsimile: 212.864.2228