UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
CAITLIN MAHONEY,                          :
                              Plaintiff,  :
                                          :    **<u>REPORT AND RECOMMENDATION</u>**
            -against-                     :
                                          :    14 Civ. 4131 (ENV) (VMS)
AMEKK CORP. (d/b/a CYPRUS                 :
AVENUE),  A&O CORP. (d/b/a BLACK          :
SHEEP PUB), 52 5TH AVENUE CORP.,          :
and ANTHONY MCERLAIN,                     :
Individually,                             :
                                          :
                              Defendants. :
-------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Caitlin Mahoney ("Plaintiff") brings this action pursuant to the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u>, and the New York Labor

Law ("NYLL"), N.Y. Lab. Law § 650 <u>et</u> <u>seq.</u>, as amended by the Wage Theft

Prevention Act ("WTPA"), N.Y. Lab. Law § 195.  <u>See</u> <u>generally</u> Second Amended

Complaint ("SAC"), ECF No. 47.  Plaintiff names as Defendants Amekk Corp.

d/b/a Cyprus Avenue ("Cyprus Avenue"), A&O Corp. d/b/a Black Sheep Pub

("Black Sheep Pub"), 52 5th Avenue Corp., and Anthony McErlain ("McErlain")

(collectively "Defendants").  <u>Id.</u>  Plaintiff seeks to recover unpaid minimum wages

and overtime compensation, unlawfully withheld tips, "spread-of-hours"

premiums, liquidated damages, pre-judgment interest, attorneys' fees and costs.

<u>Id.</u>

Despite proper service of the Summons and Second Amended Complaint, Defendants failed to answer or otherwise defend against this action. Plaintiff now moves for a default judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2). See ECF Nos. 59-64. The Honorable Eric N. Vitaliano referred the motion to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). See 3/22/2016 Docket Entry.

For the following reasons, I respectfully recommend that the District Judge **grant in part** the default judgment motion; find Defendants jointly and severally **liable** to Plaintiff for violations of the FLSA and the NYLL as discussed herein; **award** Plaintiff $15,966.38 in compensatory damages, plus pre-judgment as calculated herein and $22,938.00 in attorneys' fees and costs; and **deny in all other respects**.

## I. BACKGROUND

The following facts are derived from the Second Amended Complaint and are accepted as true for the purposes of this motion. See SAC, ECF No. 47. The factual information relating to the procedural history is taken from the Court's docket.

**A. Factual Background Regarding Defendants, McErlain's Role, And Employment Policies and Practices at Cyprus Avenue and Black Sheep Pub**

Defendants Cyprus Avenue, Black Sheep Pub and 52 5th Avenue Corp. (collectively "Corporate Defendants") are domestic business corporations organized under New York law, with principal places of business within the Eastern District of New York.  Id. ¶¶ 11-17.   Cyprus Avenue is a bar registered at 52 5th Avenue, Brooklyn, New York, id. ¶ 11; Black Sheep Pub is a bar located next door to Cyprus Avenue at 428 Bergen Street, Brooklyn, New York, id. ¶ 12; and 52 5th Avenue Corp. is a payroll company with a registered address at 52 5th Avenue, Brooklyn, New York, id. ¶ 13.  Individual Defendant Anthony McErlain is the Chief Executive Officer and one of the principal shareholders for all Corporate Defendants.  Id. ¶¶ 14, 16-17.  Defendants are "employers" pursuant to the FLSA and NYLL.  See 29 U.S.C. § 203(d); NYLL § 2(6); see also SAC, ECF No. 47 ¶ 20.

Although Cyprus Avenue and Black Sheep Pub (collectively, "the Bars") maintained two separate physical locations, their operations largely overlapped. The Bars were connected by an underground tunnel; shared an office and ice machine, both of which were located in a space underground between the Bars; shared a kitchen staff and kitchen, held cash and receipts in a common location;

shared cash on hand; shared alcohol stock; shared a delivery person for online food orders; and shared bartenders.  Id. ¶¶ 28-32, 37-39, 60, 65.

McErlain exercised control over the day-to-day operations of the Bars. Specifically, McErlain: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules and conditions of employment; (3) determined employee's rate and method of payment; and (4) maintained decision-making authority and operational control of the Bars.  Id. ¶¶ 78-82.

At all relevant times to this action, the Corporate Defendants were an "enterprise participating in commerce" within meaning of the FLSA, as its: (1) employees engaged in commerce or in the production of goods for commerce, or handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce; and (2) annual gross volume of sales exceeds $500,000.00.  See 29 U.S.C. § 203(s)(1)(A); SAC, ECF No. 47 ¶ 8.

At all relevant times, Defendants knowingly and willfully withheld Plaintiff's lawfully earned: (1) minimum wages, 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1); (2) overtime compensation pursuant to both the FLSA, 29 U.S.C. § 207(a)(1), and the NYLL, 12 N.Y.C.R.R. § 146-1.4; (3) tips pursuant to the NYLL, N.Y. Lab. Law § 196-d; and (4) spread-of-hours premiums pursuant to the NYLL,

12 N.Y.C.R.R. § 142-2.4.  See SAC, ECF No. 47 ¶¶ 1, 131, 144, 151, 162, 172, 184, 194, 215.

## B.    Factual Background Regarding Plaintiff's Work As An Employee Of Defendants

Plaintiff was employed by Defendants[1] as a bartender from November 1, 2013 through March 31, 2014.  See SAC, ECF No. 47 ¶ 25, 68.  Plaintiff regularly worked on Tuesdays from 3:30 p.m. to 2:00 a.m. (10.5 hours); Wednesdays from 3:30 p.m. to 2:00 a.m. (10.5 hours); Saturdays from 11:30 a.m. to 6:00 p.m. (6.5 hours); and Sundays from 11:30 a.m. to 2:00 a.m. (14.5 hours), for a total of 42 hours per week.  Id. ¶ 27.

Defendants originally promised to pay Plaintiff a flat rate per shift: $30 for a single shift of 6.5 to 10.5 hours, and $70 for a double shift of 14.5 hours.  Id. ¶ 107.  Defendants failed to provide this promised amount; instead, Defendants sporadically paid Plaintiff various amounts—either in cash or by check—but did

---

[1]    Notwithstanding the Bars, Plaintiff also alleges that she was employed by 52 5th Avenue Corp., a payroll company.  See SAC, ECF No. 47 ¶ 13.  Although at first glance, such an employment relationship seems atypical for a bartender, Plaintiff alleges that she was twice paid via checks payable by 52 5th Avenue Corp. and signed by the Bars' manager, Adam Smith, see id. ¶ 88, and has attached these checks to her motion for default judgment confirming same, see ECF No. 60-1.  Given Plaintiff's allegations that she was employed by 52 5th Avenue Corp., her submission of the two checks which appear to corroborate same and 52 5th Avenue Corp.'s failure to appear in this action, thus waiving its right to dispute her allegations, the Court understands Plaintiff to have been simultaneously employed by all three corporate entities (i.e., 52 5th Avenue, Black Sheep Pub, and Cyprus Avenue).

not explain how these payments were allocated in terms of wages and/or tips.  Id. ¶¶ 108-109.  Even when Plaintiff received these various sums of payment, when apportioned hourly, they fell below federal- and state-mandated minimum wage.  Id. ¶¶ 108, 126, 128-129, 136-140.

Plaintiff did not receive spread-of-hour premiums for the three days a week she worked over ten hours per day, nor did she receive overtime compensation for hours worked in excess of forty hours per week.  Id. ¶¶ 109-110.  Defendants also withheld Plaintiff's tips where payment was provided by customers through a credit card charge ("tips").  Id. ¶¶ 89-91.

### C.    Procedural History

On July 3, 2014, Plaintiff commenced the instant action against Defendants.  See ECF No. 1.  Prior to service of the original Complaint, Plaintiff filed an Amended Complaint adding then-defendant Adam Smith ("Smith"), who allegedly had an ownership interest in and managed the Bars.  See Amended Complaint, ECF No. 8 ¶¶ 14-15.

After Plaintiff purportedly served all then-defendants, and filed proof of same, see ECF Nos. 10-12, 14, 16, Smith appeared through counsel and answered the Amended Complaint, see ECF No. 17, but Defendants did not.  As a result of Defendants' failure to answer or otherwise respond, Plaintiff requested a Certificate of Default against Defendants.  See ECF No. 13.  The Clerk of the

Court subsequently entered a Certificate of Default against Defendants. See ECF No. 20.

Shortly thereafter, Plaintiff reached a settlement agreement with Smith, who was then dismissed from the matter. See 2/9/2015 Order; ECF No. 40.

On February 10, 2015, Plaintiff filed a motion for default judgment against Defendants Cyprus Avenue, Black Sheep Pub, 52 5th Avenue Corp. and McErlain. See ECF No. 21.

On February 12, 2015, the Court noted various deficiencies in Plaintiff's motion for default judgment, including the fact that it did not contain a memorandum of law or supporting affidavits. See 2/12/2015 Order. As a result, Plaintiff withdrew her motion the following day. See 2/13/2015 Order.

On April 16, 2015, Plaintiff, again, filed a motion for default judgment against Defendants. See ECF No. 34.

On May 7, 2015, District Judge Vitaliano granted Plaintiff's motion for default judgment insofar as it related to liability, and referred the matter to the undersigned for an inquest as to an appropriate award of damages. See ECF No. 42.

On July 13, 2015, this Court issued an Order noting, inter alia, issues concerning the sufficiency of Plaintiff's Amended Complaint and motion for default judgment related to Plaintiff's request for an award of damages and

attorney's fees.  See 7/13/2015 Order.  Following a conference with the Court, see ECF No. 43, Plaintiff withdrew her motion for default judgment, see ECF No. 44, and filed a Second Amended Complaint against Defendants.  See SAC, ECF No. 47.  Plaintiff thereafter filed proof of service of the Summons and Second Amended Complaint upon all Defendants.  See ECF Nos. 48-51.  After Defendants failed to answer or otherwise respond, Plaintiff requested a Certificate of Default for Defendants, see ECF No. 53, which the Clerk of the Court entered, see ECF Nos. 54-57.

On March 21, 2016, Plaintiff again moved for a default judgment.  See ECF Nos. 59-63.  Plaintiff filed proof of service of the motion and supporting papers. See ECF Nos. 64-67.  To date, Defendants have not responded in any way.

On March 22, 2016, District Judge Vitaliano referred Plaintiff's default judgment motion to the undersigned for a Report and Recommendation.  See 3/22/2016 Order.

### D.    Plaintiff's Claims

Pursuant to the FLSA and the NYLL, Plaintiff seeks unpaid minimum wages, overtime compensation, related liquidated damages, and attorneys' fees and

costs. Under the NYLL alone, Plaintiff seeks damages for spread-of-hours premiums, unlawfully withheld tips and pre-judgment interest.[2]

**E.     Plaintiff's Affidavit And Other Documentary Evidence Submitted In Support Of Request For Damages**

Plaintiff submitted an affidavit attesting to the time period during which she worked for Defendants and describing the relevant aspects of her employment, including the nature of that work, the hours worked and the compensation she received. See ECF No. 62. This affidavit is consistent with the allegations contained in the Second Amended Complaint.

Plaintiff also submitted a chart calculating the unpaid wages sought. See ECF No. 59-1, p. 21. This chart shows: (1) minimum wages purportedly owed to Plaintiff (but not under a specific statute); (2) spread-of-hours premiums purportedly owed to Plaintiff (but not under a specific statute); (3) tips purportedly owed to Plaintiff (but not under a specific statute); (4) overtime compensation purportedly owed to Plaintiff, plus liquidated damages under both the NYLL and

---

[2]     It should be noted that Plaintiff's Second Amended Complaint contains a litany of additional claims—i.e., the failure to provide wage statements, failure to provide notice of wages rates, failure to keep employee records, failure to pay within the required time frame, retaliation, and unjust enrichment—which are not mentioned in Plaintiff's motion for default judgment. As the Court directed Plaintiff to move for default judgment no later than March 21, 2016 and warned that her failure to do so could result in dismissal of the action, see 2/18/2016 Order, the Court deems all claims contained in Plaintiff's Second Amended Complaint but not raised in her motion for default judgment as waived, see Fed. R. Civ. P. 41(b).

FLSA; and (5) pre-judgment interest purportedly owed to Plaintiff (but not under a specific statute).  Id.

In support of Plaintiff's request for attorneys' fees, Plaintiff submitted an affidavit from one of her attorneys, Gail I. Auster.  See ECF No. 61.  Ms. Auster's declaration states the hours expended, rates requested, and an explanation regarding why she believes the total amount requested is justified.  Id.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 55 establishes the procedure to obtain a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing Fed. R. Civ. P. 55).  First, if a party failed to plead or otherwise defend against an action, the "clerk must enter the party's default."  See Fed. R. Civ. P. 55(a).  "The entry of default is therefore not discretionary."  Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015).  Second, the moving party must apply to the court for a default judgment after the default has been entered, as Plaintiff has done here.  See Fed. R. Civ. P. 55(b); see also ECF No. 52.  If the defaulting party still fails to appear or move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b)(2).

The trial court has "sound discretion" to grant or deny a motion for default judgment.  Enron Oil, 10 F.3d at 95.  In light of the "oft-stated preference for

resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Enron Oil, 10 F.3d at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard").

A party's default constitutes a concession of all well-pleaded allegations of liability, except for those allegations relating to damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty." See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Cement & Concrete Workers, 699 F.3d at 232. This inquiry may be accomplished by evaluating the detailed affidavits and documentary evidence submitted by the plaintiff or conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2); see also Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court."); Cement & Concrete Workers, 699 F.3d at 234 (same).

## III. DISCUSSION

### A. Proper Service Of Process

A court may not properly enter a default judgment unless it has jurisdiction over the parties against whom the judgment is sought. See Sajimi v. City of N.Y., 07 Civ. 3252 (ENV) (MDG), 2011 U.S. Dist. LEXIS 3912, at *8 (E.D.N.Y. Jan. 13, 2011). Accordingly, that party must have been served with process.

Fed. R. Civ. P. 4(e)(1) provides that service may be effected in accordance with the service rules of the state where the district is located or service is made. With regard to the Corporate Defendants, New York Business Corporation Law "permits service based on delivery of the summons and complaint to the New York Secretary of State as an agent of the corporation." Trustees of the Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F. Supp. 2d 272, 275 (E.D.N.Y. 2010) (citing N.Y. Bus. Corp. Law § 306(b)(1)). Accordingly, Plaintiff properly served the Corporate Defendants insofar as Plaintiff delivered the Summons and Second Amended Complaint to the Office of the Secretary of State of New York. See ECF Nos. 48-50.

With regard to Individual Defendant McErlain, New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") § 308(2) allows for service of process

> by delivering the summons within the state to a person of
> suitable age and discretion at the actual place of business
> dwelling place or usual place of abode of the person to be
> served and by either mailing the summons to the person

> to be served at his or her last known residence or by
> mailing the summons by first class mail to the person to
> be served at his or her actual place of business in an
> envelope bearing the legend "personal and confidential"
> and not indicating on the outside thereof, by return
> address or otherwise, that the communication is from an
> attorney or concerns an action against the person to be
> served, such delivery and mailing to be effected within
> twenty days of each other . . . .

N.Y.C.P.L.R. § 308(2). Here, Plaintiff served McErlain with notice of this action by delivering the Summons and Second Amended Complaint to his residence located at 200 21st Street, Apartment 4A, Brooklyn, New York, and leaving the aforementioned documents with McErlain's relative, James McErlain, a person of suitable age and discretion. See ECF No. 51. Thus, Plaintiff properly served McErlain pursuant to N.Y.C.P.L.R. § 308(2).

Accordingly, I find service was proper on all Defendants.

## B.     Entry Of A Default Judgment Is Warranted

When determining whether to grant a default judgment, the Court is guided by the same criteria which apply to a motion to set aside an entry of a default. See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); Enron Oil, 10 F.3d at 96. These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the adversary; and (3) whether a meritorious defense is presented. See Enron Oil, 10 F.3d at 96.

With respect to the first factor, a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness.  See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding the defendant's non-appearance and failure to respond equated to willful conduct); see also Bds. of Trs. v. Frank Torrone & Sons, Inc., 12 Civ. 3363 (KAM) (VMS), 2014 U.S. Dist. LEXIS 22298, at *7-8 (E.D.N.Y. Feb. 3, 2014), adopted by 2014 U.S. Dist. LEXIS 22282 (E.D.N.Y. Feb. 21, 2014) (same).  Here, Defendants have not responded to the Second Amended Complaint despite proper service.  See ECF Nos. 48-51.  Plaintiff also submitted an affidavit of service confirming that Defendants were provided notice of the motion for default judgment.  See ECF Nos. 64-67.  Defendants have nonetheless failed to respond to Plaintiff's motion for default judgment or otherwise appeared in this action.  Accordingly, Defendants' failure to respond to the Second Amended Complaint or the instant motion sufficiently demonstrates willfulness.  See Traffic Sports USA v. Modelos Restaurante, Inc., 11 Civ. 1454 (ADS) (AKT), 2012 U.S. Dist. LEXIS 119074, at *5-6 (E.D.N.Y. Aug. 1, 2012), adopted by 2012 U.S. Dist. LEXIS 119090 (E.D.N.Y. Aug. 22, 2012) (finding the defendant's failure to respond "in any way" to the Complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful); Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp., 02 Civ. 9044 (LTS) (GWG), 2003 U.S. Dist. LEXIS

6881, at *6 (S.D.N.Y. Apr. 25, 2003) (holding that the defendant's default was willful where he failed to respond in any way and failed to provide any explanation for such failure).

As to the second factor under consideration, denying this motion would be prejudicial to Plaintiff insofar "as there are no additional steps available to secure relief in this Court."  See Flanagan v. N. Star Concrete Constr., Inc., 13 Civ. 2300 (JS) (AKT), 2014 U.S. Dist. LEXIS 131632, at *14 (E.D.N.Y. Aug. 6, 2014), adopted by 2014 U.S. Dist. LEXIS 141075 (E.D.N.Y. Oct. 2, 2014); see Flanagan v. N. Star Concrete Constr., Inc., 13 Civ. 2300 (JS) (AKT), 2014 U.S. Dist. LEXIS 131632, at *14 (E.D.N.Y. Aug. 6, 2014), adopted by 2014 U.S. Dist. LEXIS 130868 (E.D.N.Y. Sept. 16, 2014) (ignoring the defendant's default would be prejudicial because the "[p]laintiff would be unable to recover for the claims adequately set forth in the Complaint").

Third, Defendants cannot establish a meritorious defense since, by failing to appear in this action, they are unable to present any evidence regarding a defense. See Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

Accordingly, I find Defendants' failure to answer or otherwise respond to the Second Amended Complaint in any way constitutes an admission of the factual allegations therein.  See  Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotations omitted).

Accordingly, I now proceed to consider whether those facts establish Defendants' liability under federal and state law.

## C.    Liability

### 1.    Plaintiff Qualifies For the FLSA's And The NYLL's Protections As An Employee Of Defendants

#### i.    Plaintiff Qualifies For The FLSA Protections

In order to establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must demonstrate that: (1) she is an "employee" of the defendant; and (2) the defendant is an "enterprise engaged in commerce" during the relevant period.  See 29 U.S.C. §§ 206(a), 207(a); see Chen v. Major League Baseball, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014).

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  Here, Plaintiff qualifies as an employee under the FLSA insofar as Plaintiff's Second Amended Complaint alleges that

Defendants employed Plaintiff within this statutory meaning, see Garcia v. Badyna, 13 Civ. 4021 (RRM) (CLP), 2014 U.S. Dist. LEXIS 134089, at *12 (E.D.N.Y. Sept. 23, 2014), adopted by 2014 U.S. Dist. LEXIS 133722 (E.D.N.Y. Sept. 23, 2014) (noting that, as the plaintiff alleged in the complaint that he was an employee, "[i]t follows . . . that for purposes of this default, [the plaintiff] qualifies as an 'employee' under the FLSA"); see also SAC, ECF No. 47 ¶ 18, and Plaintiff alleges specific work performed for Defendants, see id. ¶¶ 25-27, 37.

Second, Plaintiff has demonstrated that the Corporate Defendants are "enterprise[s] engaged in commerce." See 29 U.S.C. § 203(s)(1)(A). The FLSA delineates an enterprise as one with "employees engaged in commerce . . . [or] handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and an "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Here, Plaintiff alleges in the Second Amended Complaint that the annual gross volume of sales of the Corporate Defendants exceeded $500,000, and that the Corporate Defendants "constituted a single integrated enterprise engaged interstate commerce." See SAC, ECF No. 47 ¶ 8.

In Fermin v. Las Delicias Peruanas Rest., Inc., this Court held that it was reasonable to infer that the "myriad goods necessary to operate a [] restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come

from New York State." 93 F. Supp. 3d 19, 33-34 (E.D.N.Y. 2015). So, too, here it is reasonable to infer that some of the materials used and/or sold by the Bars and their respective eat-in dining areas originated outside of New York State. See id.; Huerta v. Victoria Bakery, 10 Civ. 4754 (RJD) (JO), 2012 U.S. Dist. LEXIS 46407, at *6 (E.D.N.Y. Mar. 30, 2012) ("It is inconceivable that some of the bread-making materials used by [the] plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York."). More significantly, Plaintiff specifically alleges that, inter alia, the Bars sold alcohol, including liquor, beer and wine, which originated from outside New York State and provides specific examples of same.[3] See SAC, ECF No. 47 ¶ 57; Smith v. Nagai, 10 Civ. 8237 (PAE) (JCF), 2012 U.S. Dist. LEXIS 89352, at *4 (S.D.N.Y. May 15, 2012), adopted by 2012 U.S. Dist. LEXIS 89353 (S.D.N.Y., June 26, 2012) (stating that the plaintiff had fulfilled the FLSA's interstate commerce requirement with evidence that the defendant, whose principal place of business was New York, "purchase[d] fish, ginger and flour, among other items" from outside the state).

Accordingly, Plaintiff qualifies for protection under the FLSA.

---

[3]     For example, the Bars sold, inter alia, beer brewed in Pennsylvania, Rhode Island and New Jersey. See ECF No. 47 ¶ 57

### ii.    Plaintiff Qualifies For the NYLL Protections

To prevail on a claim under the NYLL, Plaintiff must prove that she was an "employee" and that Defendants were "employers," as defined by the statute. <u>See Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009). The NYLL defines an employee as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an employer is described as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," N.Y. Lab. Law § 190(3). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." <u>Garcia</u>, 2014 U.S. Dist. LEXIS 134089, at *14.

"[T]he critical inquiry in determining whether this employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." <u>Meyer v. United States Tennis Ass'n</u>, 607 F. App'x 121, 122 (2d Cir. 2015) (citing <u>Bynog v. Cipriani Grp., Inc.</u>, 802 N.E.2d 1090, 1092-93 (2003)); <u>see Velu v. Velocity Express, Inc.</u>, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009). The factors relevant to this assessment of control include whether the worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe

benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule."
Bynog, 802 N.E.2d at 1093.

Regarding the first factor, Plaintiff did not work at her own convenience insofar as she had to arrive at the Bars at a specific hour to begin her shifts, she ended her shifts at a specific hour and she was not permitted any lunch or rest breaks.  See SAC, ECF No. 47 ¶¶ 27, 69; cf. Sellers v. Royal Bank of Canada, 12 Civ. 1577 (KBF), 2014 U.S. Dist. LEXIS 4563, at *17-18 (S.D.N.Y. Jan. 8, 2014) (finding the plaintiff worked at his own convenience because he could arrive and leave work whenever he pleased and take breaks at his pleasure).

The second factor is neutral as Plaintiff's Second Amended Complaint is silent regarding whether Plaintiff was restricted from engaging in other employment.

The third and fourth factors arguably favor Defendants insofar as Plaintiff was paid "off the books" specifically to avoid the expense of providing benefits. See SAC, ECF No. 47 ¶ 87.  These "factors, in context, merit modest weight." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 925 (S.D.N.Y. 2013) ("To assign [the third and fourth factors] much weight would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor and denying her employee benefits.").  To allow Defendants to derive a benefit for flouting federal and state wage reporting and tax

laws would undermine the very wage laws which were enacted to protect employees.

With regard to the fifth factor, although the Second Amended Complaint does not explicitly state that Plaintiff was on a fixed schedule, Plaintiff alleges she worked on the same days every week, for the same number of hours and shifts. See SAC, ECF No. 47 ¶¶ 27, 35, 37; cf. Malouf v. Equinox Holdings, Inc., 2012 N.Y. Misc. LEXIS 6024, at *27 (N.Y. Sup. Oct. 22, 2012) (finding the plaintiff, who sporadically appeared as a guest class instructor at the defendant gym, did not meet the fixed schedule factor). Thus, this factor favors Plaintiff.

It is also noteworthy that, as of 2014, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." See Hart, 967 F. Supp. 2d at 924; see also Topo v. Dhir, 01 Civ. 10881 (PKC), 2004 U.S. Dist. LEXIS 4134, at *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations.").

Considering the five relevant factors, see Bynog, 802 N.E.2d at 1093, under the circumstances, and in view of the overarching issue of the degree of control exercised by Defendants, I find that Plaintiff qualifies as an employee under the NYLL.

### iii. Individual Defendant McErlain's Status As Plaintiff's Employer Under The FLSA And The NYLL

Next, the Court considers Individual Defendant McErlain's liability under the FLSA and the NYLL.

In <u>Carter v. Dutchess Community College</u>, 735 F.2d 12 (2d Cir. 1984), the Second Circuit outlined a multi-factor test to determine the "economic reality" of an "employment relationship" between an individual defendant and an FLSA-plaintiff. <u>See</u> <u>Carter</u>, 735 F.2d at 12; <u>see also</u> <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 103-05 (2d Cir. 2013) (describing the <u>Carter</u> factors in determining an individual defendant's liability for an FLSA violation). The factors relevant to this assessment include "whether the alleged employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." <u>See</u> <u>Irizarry</u>, 722 F.3d at 103-05. "No one of these factors is dispositive, nor were they, as a whole, exclusive." <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 142-43 (2d Cir. 2008) (describing the employer-employee relationship analysis where distinguishing between independent contractors and employees) (quoting <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1059 (2d Cir. 1988)). The Second Circuit has emphasized that this analysis must be determined on "a case-by-case basis" and "by review of the

totality of the circumstances." Barfield, 537 F.3d at 141-42 (citing Carter, 735

F.2d at 12 n.1.).

Here, Plaintiff alleges that McErlain: (1) had the power to hire and fire

employees; (2) supervised and controlled employee work schedules and conditions

of employment; and (3) determined the rate and method of employee's payment,

see SAC, ECF No. 47 ¶¶ 78-82, thus establishing three of the Carter factors. The

fourth factor, regarding employment records, is unsatisfied as Plaintiff alleges that

employment records were not kept at all. See id. ¶¶ 86-87. This does not

undermine the "economic reality" that McErlain controlled all tasks related to

Plaintiff's employment.[4] See Herman v. RSR Sec. Servs., 172 F.3d 132, 140 (2d

Cir. 1999) ("But that this fourth factor is not met is not dispositive.") (citation

omitted).

As three of the four Carter factors are satisfied, McErlain is properly

considered Plaintiff's employer and should be held individually liable for any

FLSA violations. See Ling Nan Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d

Cir. 2003) ("[The individual defendant] jointly employed the company's

employees where the [the individual defendant] exercised three of the four

employer prerogatives identified in Carter.") (citing Herman, 172 F.3d at 139);

---

[4]    It should also be noted that the failure to keep the records is itself an FLSA
and a NYLL violation. See 29 U.S.C. § 211(c); NYLL § 195(4).

Teri v. Spinelli, 980 F. Supp. 2d 366, 376 (E.D.N.Y. 2013) ("[T]he Court concludes that no reasonable jury considering the 'economic realities' of the [parties'] relationship could find that [the individual defendant] was not [the p]laintiffs' joint employer under the FLSA . . . .").

In light of my finding that McErlain was Plaintiff's employer for the purposes of FLSA liability, I also find that he was Plaintiff's employer for the purposes of NYLL liability as well. See Apple v. Atlantic Yards Dev. Co., LLC, 11 Civ. 5550 (JG), 2014 U.S. Dist. LEXIS 152053, at *18 n.4 (E.D.N.Y. Oct. 27, 2014) (concluding that the defendants were not the plaintiffs' employers under the FLSA or the NYLL using the Carter analysis and stating that the NYLL was not addressed separately because its definitions were nearly identical to the FLSA's and "courts use the same tests to determine joint employment under both the NYLL and the FLSA") (citing Wilk v. VIP Health Care Servs., Inc., 10 Civ. 5530 (ILG) (JMA), 2012 U.S. Dist. LEXIS 21630, at *22-23 n.9 (E.D.N.Y. Feb. 21, 2012)); Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) ("Courts have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA."); Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) ("The economic reality test will be used to determine whether [the individual defendant] is [the plaintiff's] employer as defined under both state and federal law, as there is general support

for giving [the] FLSA and the [NYLL] consistent interpretations.") (citation omitted).

### iv.  Defendants Are Joint And Severally Liable

As the Court finds that the Corporate Defendants and McErlain were jointly Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiff's favor.  See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and a NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); see Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases); Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) (same).

### C.  Statute of Limitations: Timeliness Of The FLSA And NYLL Claims

The relevant statutes of limitations are two years under the FLSA, see 29 U.S.C. § 255(a), and six years under the NYLL, see NYLL § 663(3).  If an employer's violations are deemed "willful," the statute of limitations pursuant to the FLSA increases to three years.  See 29 U.S.C. § 255(a).  By virtue of

Defendants' default, combined with Plaintiff's allegations that Defendants "willfully" violated the FLSA, see SAC, ECF No. 47 ¶ 130, the three-year statute of limitations applies to Plaintiff's FLSA claims. See Rodriguez v. Queens Convenience Deli Corp., 09 Civ. 1089 (KAM) (SMG), 2011 U.S. Dist. LEXIS 120478, at *4 (E.D.N.Y. Oct. 18, 2011) ("When a defendant defaults, the violation is considered 'willful' and the three[-]year statute of limitations applies."). Accordingly, the three-year statute of limitations applies to Plaintiff's FLSA claims, and the six-year statute of limitations applies to her NYLL claims.

Plaintiff filed her original Complaint on July 3, 2014. See ECF No. 1. Therefore, Plaintiff may recover damages arising out of her employment going back six years under state law, or July 3, 2008, and three years under federal law, or July 3, 2011. As Plaintiff alleges that she was employed by Defendants from November 1, 2013 through March 31, 2014, see SAC, ECF No. 47 ¶ 25, her FLSA and NYLL claims both fall within the respective statute of limitations periods.

## D. Defendants' Liability Under The FLSA And The NYLL

### 1. Defendants Should Be Held Liable Under The FLSA And The NYLL For Failing To Pay Plaintiff A Minimum Wage

Having determined that Plaintiff is entitled to the protections of the FLSA and the NYLL, and that her claims have been brought within the respective statutes of limitation, I now conclude that Plaintiff has sufficiently alleged Defendants' violations of both federal and state minimum wage laws.

Both federal and New York state laws mandate employers pay their employees a minimum wage for the first 40 hours that employees work each week.  See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1).  For all times relevant to this litigation, Defendants were required to pay Plaintiff the federal minimum hourly wage of $7.25.  See 29 U.S.C. § 206(a)(1)(C) (mandating a minimum wage of $7.25 an hour as of July 24, 2009).  New York State minimum wage, however, required a higher hourly minimum wage.  Specifically, Defendants were obligated to pay Plaintiff a minimum hourly wage of $7.25 prior to December 31, 2013 and $8.00 thereafter.[5]  See N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.

An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that she performed work for which he was not properly compensated.  Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (discussing this burden of proof in the context of overtime; and citing Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003)); Flores v. J & B Club House Tavern, Inc., 10 Civ. 4332 (GAY), 2012 U.S. Dist. LEXIS 151549, at *3 (S.D.N.Y. Oct. 16, 2012) (discussing that NYLL plaintiffs have the burden to prove that they performed the work for which they claim the defendant failed to compensate them).

[5]      See https://www.labor.ny.gov/stats/minimum_wage.asp (setting a minimum wage of $7.25 from July 24, 2009 through December 30, 2013, and $8.00 from December 31, 2013 through December 30, 2014) (last visited August 5, 2016).

Both federal and New York State law require employers to "make, keep, and preserve" records of employee wages, hours and employment conditions.  See 29 U.S.C. § 211(c); 12 N.Y.C.R.R.  § 142-2.6; Pineda, 831 F. Supp. 2d at 674 (citing the federal and state statutes).  If an employer fails to produce these requisite records, the plaintiff may satisfy her burden by relying solely on her recollection.  See Rodriguez, 2011 U.S. Dist. LEXIS 120478, at *2; Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011).  Where, as here, a defendant employer defaults, the plaintiff's "recollection and estimates of hours worked are presumed to be correct."  Pavia v. Around the Clock Grocery, Inc., 03 Civ. 6465 (ERK), 2005 U.S. Dist. LEXIS 43229, at *5 (E.D.N.Y. Nov. 15, 2005) (finding plaintiff's testimony to be sufficient to establish unpaid wages).  Nonetheless, a plaintiff's approximations and estimates must reasonable and appropriate.  See Jemine v. Dennis, 901 F. Supp. 2d 365, 376-79 (E.D.N.Y. 2012).

Here, Plaintiff's SAC sufficiently establishes that she performed such work and that she was paid below the minimum wage.  According to Plaintiff, Defendants paid her a total of $3,268.00 and required her to work 903 hours (42 [hours a week] * 21.5 [weeks under Defendants' employ]) during the five months she was employed.[6]  See SAC, ECF No. 47 ¶¶ 88, 96, 108-109, 115; Affidavit of

---

[6]     Because Plaintiff alleges that Defendants sporadically paid her various amounts of money, the Court calculates her blanket rate of pay.  See SAC, ECF No. 47 ¶¶ 108-109.  In addition, because Defendants are not entitled to the FLSA

Caitlin Mahoney ("Pl's Aff."), ECF No. 62 ¶¶ 7, 23-24, 27-28, 31, 52. Therefore, Defendants effectively paid Plaintiff an hourly wage of $3.62 ($3,268.00 [total compensation] / 903 [hours worked]), which is far below the required rates.

As Defendants were required to comply with both federal and New York State law, I calculate the wages to which Plaintiff is entitled as required by the NYLL. See 29 U.S.C. § 218(a), Rodriguez, 2011 U.S. Dist. LEXIS 120478, at *2 ("[A] plaintiff may recover under the [minimum wage] statute which provides the greatest amount of damages."); Wicaksono v. XYZ Corp., 10 Civ. 3635 (LAC) (JCF), 2011 U.S. Dist. LEXIS 55771, at *4 (S.D.N.Y. May 2, 2011), adopted by 2011 U.S. Dist. LEXIS 55734 (S.D.N.Y. May 24, 2011) (same).

In light of the foregoing, it is respectfully recommended that the District Judge find Defendants liable to Plaintiff for failing to pay her the FLSA and the NYLL minimum wage. Defendants failed to pay Plaintiff the FLSA and the NYLL minimum wage from November 1, 2013 through March 31, 2014, respectively.

---

and/or NYLL's tip credit provisions, see Section III(D)(4), infra, unpaid tips are not factored into Plaintiff's total compensation.

### 2. Defendants Should Be Held Liable For Failing To Pay Plaintiff Overtime Compensation As Required By The FLSA And The NYLL

Federal and state law require that employers pay employees "one and one-half times" their "regular rate" for any hours worked in excess of forty hours in a given week. 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4. The employee's overtime rate is calculated using the statutory minimum wage where the employee's "regular" hourly rate falls below the required minimum wage. See Pineda-Herrera v. Da-Ar-Da, Inc., 09 Civ. 5140 (RLM), 2011 U.S. Dist. LEXIS 57121, at *3 (E.D.N.Y. May 26, 2011).

The Second Circuit recently clarified "the degree of specificity" that a plaintiff must meet in order to "make a Section 207(a)(1) FLSA overtime claim" in a trio of cases. Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); see Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200-201 (2d Cir. 2013); Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 88-89 (2d Cir. 2013). Specifically, a plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week." See Nakahata, 723 F.3d at 201; see Lundy, 711 F.3d at 114 ("[I]n order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40

hours."). Although it is not necessary to actually estimate the number of hours a plaintiff worked in "some or all workweeks," "some factual context" is necessary in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to plausible.'" DeJesus, 726 F.3d 85 at 88-90 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff's burden, as described by these three cases, likewise applies in the context of the NYLL overtime compensation claim. See 12 N.Y.C.R.R. § 142-2.2 (stating an employer shall pay an employee for overtime "in the manner and methods provided in and subject to the exemptions of [the FLSA]"); see Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 357 (E.D.N.Y. 2014) ("[T]he NYLL adopts th[e] same standard . . . [as the] FLSA definition of overtime into the [NYLL]." (quoting Nakahata, 723 F.3d at 200)).

Here, Plaintiff claims Defendants failed to pay her overtime for the entirety of her employment thereby violating both the FLSA and NYLL. See SAC, ECF No. 47 ¶¶ 107, 109. In contrast to Lundy, Nakahata and DeJesus, in which the Second Circuit dismissed FLSA-based overtime claims as speculative and insufficiently detailed, Plaintiff provides the Court with specific information regarding the overtime hours she worked. Plaintiff alleges that she regularly worked 42 hours per week throughout the course of her employment. See SAC, ECF No. 47 ¶ 27; see Tackie v. Keff Enterps. LLC, 14 Civ. 2074 (JPO), 2014 U.S. Dist. LEXIS 130148, at *7 (S.D.N.Y. Sept. 16, 2014) (finding the FLSA plaintiff

adequately alleged an overtime claim where "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week"). Plaintiff's allegations demonstrate her overtime claim without the need for any inference because Plaintiff's set schedule exceeded forty hours per workweek. Cf. Lundy, 711 F.3d at 114-115 (finding allegations insufficient to establish a FLSA claim that on top of a regular 37.5-hour workweek, the plaintiff had to complete a smattering of additional small tasks).

In light of the foregoing, it is respectfully recommended that the District Judge find Defendants liable to Plaintiff for failing to pay overtime compensation pursuant to the FLSA and the NYLL. Defendants failed to pay Plaintiff proper overtime compensation for 2 hours a week from November 1, 2013 through March 31, 2014, or 21.5 weeks.

### 3. Defendants Should Be Held Liable For Failing To Pay Plaintiff Spread-Of-Hours Pay As Required By The NYLL

Employees are entitled under New York law to a "spread-of-hours" premium for each workday worked in excess of ten hours.[7] See 12 N.Y.C.R.R. § 142-2.4; N.Y. Lab. Law § 650 et seq. Specifically, for any workday that lasts longer than ten hours, employees are entitled to receive "one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). A limitation upon

---

[7] There is no spread-of-hours claim counterpart under the FLSA.

a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage.  See Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc., 10 Civ. 3840 (NG) (CLP), 2013 U.S. Dist. LEXIS 123951, at *38-39 (E.D.N.Y. Aug. 28, 2013), adopted by 2013 U.S. Dist. LEXIS 122776 (E.D.N.Y., Aug. 27, 2013) (citing to New York State Department of Labor opinion letters stating this prerequisite).

Here, Plaintiff's SAC demonstrates that throughout the course of her employment, she regularly worked at least ten hours per day, three days a week.  See SAC, ECF No. 47 ¶¶ 27.  Plaintiff further alleges that Defendants failed to pay the NYLL minimum wage to Plaintiff.  Id. ¶ 107.  As such, Plaintiff has established Defendants' liability as to spread-of-hours pay.

In light of the foregoing, it is respectfully recommended that the District Judge find Defendants liable to Plaintiff for spread-of-hours pay.  Plaintiff is entitled to spread-of-hours pay for the three days a week she worked in excess of 10 hours, at the respective statutory minimum, from November 1, 2013 through March 31, 2014, or 21.5 weeks.

### 4. Defendants May Not Benefit From The Tip Credit Provisions Of The FLSA And The NYLL, And Should Be Held Liable For Unlawfully Appropriating Plaintiff's Tips

Under both the FLSA and NYLL, employers may credit a portion of an employee's tips against the minimum wage when certain preconditions are met.

See 29 U.S.C. § 203(m) (the federal tip credit provision); 12 N.Y.C.R.R. § 146-1.3 (the tip credit provision of the Hospitality Wage Order); see also Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 240 (2d Cir. 2011) (explaining the application of the tip credit under the FLSA); Barenboim v. Starbucks Corp., 698 F.3d 104, 110 n.1 (2d Cir. 2012) (explaining the application of the tip credit under the NYLL); Mendez v. Int'l Food House Inc., 13 Civ. 2651 (JPO), 2014 U.S. Dist. LEXIS 121158, at *6-8 (S.D.N.Y. Aug. 28, 2014) (discussing the federal and New York tip credit provisions).

As previously noted, Plaintiff worked for Defendants as a bartender, where she routinely received tips from customers. See SAC, ECF No. 47 ¶¶ 25, 89-91. Although Plaintiff alleges that Defendants unlawfully withheld these tips in violation of N.Y. Lab. Law § 196-d, see id. ¶¶ 89-91, discussed infra, the Court first determines whether Defendants were entitled to any tip credit against her wages.

Under federal and state law, an employer is ineligible for the "tip credit" unless it: (1) informs the employee of its intent to utilize the tip credit; and (2) permits the employee to retain all of the tips the employee receives. See 28 U.S.C. § 203(m) (the employee must be "informed by the employer of the provisions of this subsection"); 12 N.Y.C.R.R. § 146-2.2(a) (requiring written notice of "the amount of tip credit, if any, to be taken from the basic minimum hourly rate");

Gonzalez v. Jane Roe Inc., 10 Civ. 1000 (NGG) (RML), 2015 U.S. Dist. LEXIS 103370, at *5-6 n.6 (E.D.N.Y. July 15, 2015) (discussing the federal and state tip credit notice requirements).

Here, Defendants failed to satisfy either of the tip-credit requirements. Plaintiff was not provided with written notice nor otherwise informed of Defendants' intent to utilize the tip credit, and Defendants withheld tips offered by customers. See ECF No. 47 ¶¶ 89-91, 128. Accordingly, the Court will apply the full minimum wage when considering Plaintiff's claims without reference to any tips she was offered by customers.

I further find that Plaintiff is entitled to reimbursement of the tips she was not provided. Pursuant to NYLL § 196-d, an employer may not "accept . . . any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d; see Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012) (returning the improperly retained ten percent of Plaintiff's tips pursuant to NYLL § 196-d). Despite this, according to Plaintiff, Defendants retained all tips she received from customers during the course of her employment. See ECF No. 47 ¶¶ 89-91.

In light of the foregoing, it is respectfully recommended that the District Judge find that: (1) Defendants are not entitled to any tip credit against Plaintiff's wages; and (2) Defendants unlawfully misappropriated the tips Plaintiff received.

### 5. Conclusion

As discussed herein, it is respectfully recommended that the District Judge **find** that Plaintiff qualifies for the FLSA's and the NYLL's protections under Defendants' employ; and  that Defendants are liable to Plaintiff for: (1) failing to pay minimum wage; (2) failing to pay overtime compensation; (3) failing to pay spread-of-hours premiums; and (4) misappropriating her tips.

### E. Damages

#### 1. The Law Relevant To Plaintiff's Damages Calculations

##### i. Liquidated Damages

Plaintiff seeks liquidated damages under the FLSA and NYLL.  <u>See</u> SAC, ECF No. 47 ¶¶ 134, 145, 173, 185.

Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages.  <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 216(b)); 29 U.S.C. § 216(b) ("Any employer who violates [the unpaid wage or overtime provisions of the FLSA] shall be liable . . . in the amount of . . . their unpaid minimum wages, or their unpaid overtime

compensation . . . and in an additional equal amount as liquidated damages.").  The

FLSA affords the court "sound discretion" to award such damages where the

employer demonstrates that he acted in "good faith" and with "reasonable grounds

for believing that his act or omission" did not violate the FLSA.  See 29 U.S.C.S. §

260 ("[I]f the employer shows [the violation] . . . was in good faith and that he had

reasonable grounds for believing that his act or omission was not a violation of the

[FLSA] . . . the court may, in its sound discretion, award no liquidated damages.").

The Second Circuit has "characterized the employer's burden as 'a difficult one,'

emphasizing that "double damages [are] the norm and single damages the

exception."  Barfield, 537 F.3d at 150 (citing Herman, 172 F.3d at 142).

The NYLL mirrors the FLSA and similarly permits employees to recover

"an additional amount as liquidated damages equal to 100 percent of the total

amount of the wages found to be due . . . unless the employer proves a good faith

basis for believing that its underpayment of wages was in compliance with the

law."[8]  N.Y. Lab. Law § 198(1-a); see N.Y. Lab. Law § 663(1); Chenensky v. N.Y.

---

[8]     The District Court notes that, prior to November 2009, the NYLL allowed
for liquidated damages only upon a finding that the employer's violation was
"willful," and then awarded an amount equal to only twenty-five percent of the
total owed.  N.Y. Lab. Law § 198(1)(a) (McKinney's 2007); see Eschmann v.
White Plains Crane Serv., 11 Civ. 5881 (KAM) (VVP), 2014 U.S. Dist. LEXIS
38580, at *27 (E.D.N.Y. Mar. 24, 2014) ("Effective November 24, 2009, NYLL §
198(1-a) was amended to provide for a liquidated damages award equal to 25% of
the amount of unpaid wages unless the employer proves a good faith basis to
believe that its underpayment of wages was in compliance with the law. Prior to

Life Ins. Co., 07 Civ. 11504 (WHP), 2012 U.S. Dist. LEXIS 8986, at *4 (S.D.N.Y. Jan. 10, 2012); NYLL § 663(1)); Easterly v. Tri-Star Transp. Corp., 11 Civ. 6365 (VB) (PED), 2014 U.S. Dist. LEXIS 180999, at *15 (S.D.N.Y. Nov. 19, 2014), adopted by 2015 U.S. Dist. LEXIS 7970 (E.D.N.Y. Jan. 23, 2015); Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 10 n.8 (2012). Thus, both the FSLA and NYLL: (1) provide for liquidated damages equal to 100% of the total unpaid compensation found due; and (2) place the burden of avoiding liability on the defendant.

District courts in the Second Circuit are divided over whether a plaintiff may "double recover" liquidated damages under both statutes. See, e.g., Easterly, 2014 U.S. Dist. LEXIS 180999, at *15 (allowing for the simultaneous recovery of both forms of liquidated damages); Villegas v. Monica Rest. Corp., 12 Civ. 4131 (VVP), 2013 U.S. Dist. LEXIS 111984, at *8 (E.D.N.Y. Aug. 8, 2013) ("[C]umulative recovery of liquidated damages under both statutes is unwarranted."). Courts permitted plaintiffs to recover liquidated damages under both statutes have reasoned that the statutes serve different purposes. See, e.g.,

_____

November 24, 2009, a prevailing plaintiff was entitled to recover this amount of liquidated damages only if the plaintiff could prove that the employer's NYLL violations were 'willful.'" (citing N.Y. Lab. Law § 198(1)(a) (McKinney's 2007) & N.Y. Lab. Law § 198(1)(a) (McKinney's 2009))). On April 9, 2011, the liquidated damages amount recoverable under the NYLL was increased from 25% to 100%. See Najnin v. Dollar Mountain, Inc., 14 Civ. 5758 (WHP), 2015 U.S. Dist. LEXIS 141811, at *5-6 (S.D.N.Y. Sept. 25, 2015).

Gunawan, 897 F. Supp. 2d at 91 (recommending an award of liquidated damages under both statutes because the Court was "persuaded that the two statutory provisions serve different purposes and are therefore not mutually exclusive"). This view reasons that the purpose of liquidated damages under the FLSA is to provide compensation to the employee occasioned by the delay in receiving wages, while the purpose of liquidated damages under the NYLL is to deter an employer's willful withholding of wages. See Herman, 172 F.3d at 142; United States v. Sabhnani, 599 F.3d 215, 260 (2d Cir. 2010); Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

Recent changes to the NYLL, see Footnote 8, supra, render the liquidated damages provision nearly identical to its FLSA counterpart. This undermines the purported distinction in purpose between the two statutes and, in this Court's view, "fortifies the conclusion that cumulative recovery of liquidated damages under both the FLSA and the NYLL is unwarranted." Animas v. Balcon Quiteno Inc., 14 Civ. 3763 (CBA) (VVP), 2015 U.S. Dist. LEXIS 177666, at *15 (E.D.N.Y. Sept. 14, 2015), adopted by 2016 U.S. Dist. LEXIS 42275 (E.D.N.Y. Mar. 30, 2016). The shift from requiring a showing of willfulness, to which a punitive response might have been appropriate, to simply requiring a showing of a statutory violation without any mens rea, is a fundamental change in the operation of the New York State wage-and-hour scheme. Eliminating this mental-state requirement

simultaneously eliminates the justification for considering the New York liquidated damages provision as punitive or directed at a particular subset of conduct in which the motivation of the defendant, rather than the harm caused to the plaintiff, is the focus.  See Animas, 2015 U.S. Dist. LEXIS 177666, at *17 ("[W]ith the elimination of the willfulness requirement and the increase in the liquidated damages percentage . . . the NYLL liquidated damages provision is identical to the FLSA's provision, and it becomes difficult to accept that it is designed to serve a different purpose from the FLSA's provision."); Gunawan, 897 F. Supp. 2d at 91 n.11 ("To the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms.").

Accordingly, I find the latter view—that is, Plaintiff may only recover liquidated damages under one of the FLSA or NYLL—more persuasive.  A conclusion otherwise effectively sanctions a "judge-created treble damages remedy" that neither legislature—Congress nor New York—appears to have intended.  Yun Hong Hua v. Eight Star Inc., 15 Civ. 275 (BMC), 2015 U.S. Dist. LEXIS 64062, at *8 (E.D.N.Y. May 15, 2015); see Castillo v. RV Transp., Inc., 15 Civ. 527 (LGS) (JCF), 2016 U.S. Dist. LEXIS 48503, at *6-7 (S.D.N.Y. Apr. 11, 2016) ("Nothing in either [the FLSA or the NYLL] suggests that the legislators envisioned or intended that successful plaintiffs would reap what in effect are three

times their damages, rather than double their damages as the statutes explicitly provide.").

Accordingly, it is respectfully recommended that the District Judge find that Plaintiff is not entitled to simultaneous liquidated damages under both the FLSA and NYLL, but instead, only under whichever statute provides her a greater potential recovery.  See Chuchuca v. Creative Customs Cabinets Inc., 13 Civ. 2506 (RLM), 2014 U.S. Dist. LEXIS 164846, at *43-47 (E.D.N.Y. Nov. 25, 2014) (awarding the greater of FLSA and NYLL liquidated damages where both forms of damages were otherwise available for the same violation).

Here, Defendants have not answered or responded at all to this action, much less demonstrated a "good faith" basis for believing the "underpayment" of minimum wage and overtime wage rates was lawful, as both the FLSA and the NYLL require in order to prevent the imposition of liquidated damages.  By contrast, Plaintiff has alleged that Defendants' FLSA and NYLL violations were willful.  See SAC, ECF No. 47 ¶¶ 131, 144, 172, 184.

As such, it is respectfully recommended that the District Court find that Plaintiff is permitted to recover liquidated damages under the greater of the FLSA or NYLL.

## ii.    Pre-judgment Interest Under The NYLL

Although it is "well settled" that pre-judgment interest is not awardable under the FLSA, <u>Begum v. Ariba Disc., Inc.</u>, 12 Civ. 6620 (DLC), 2015 U.S. Dist. LEXIS 5598, at *6-7 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest," <u>Fermin</u>, 93 F. Supp. 3d at 38. Under the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."), "[i]nterest shall be at the rate of nine per centum per annum."  N.Y.C.P.L.R. § 5004.  Courts ordinarily apply a statutory interest rate of nine percent per annum computed on a simple interest basis interest from "the earliest ascertainable date the cause of action existed."  N.Y.C.P.L.R §§ 5001(b); 5004; <u>see also</u> <u>Koylum, Inc. v. Peksen Realty Corp.</u>, 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005) (discussing N.Y.C.P.L.R. §§ 5001, 5004).  Where, as here, damages were "incurred at various times," courts typically use the "midpoint of the accrual of damages" method to calculate interest.  <u>See</u>, <u>e.g.</u>, <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 342 (S.D.N.Y 2005).  To this end, "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed is the one most commonly used."  <u>Gunawan</u>, 897 F. Supp. 2d at 93.

Here, Plaintiff's employment with Defendants began on November 1, 2013, <u>see</u> SAC, ECF No. 47 ¶ 25, and the original Complaint was filed on July 3, 2014, <u>see</u> ECF No. 1.  Applying the reasonable intermediate date approach, the midpoint

date for the purposes pre-judgment interest calculations is March 3, 2014 (the midpoint between November 1, 2013 and July 3, 2014).

As described below, see Section IV(D), infra, the amount of wages due to Plaintiff under the NYLL is $9,796.97. The Court calculates pre-judgment interest on this amount at a rate of 9% per year as $2,279.64. As the unpaid overtime wages remain outstanding, daily interest shall continue to accrue at the rate of $2.42 per day for each day until judgment is entered.[9]

As such, it is respectfully recommended that the District Judge order Defendants to pay Plaintiff **$2,279.64** in pre-judgment interest up through and including, September 30, 2016, and an additional $2.42 per day for each day thereafter until judgment is entered.

## IV.    DAMAGES CALCULATIONS

The calculations relevant to Plaintiff's damages are provided in Appendix I.[10]

---

[9]     These figures were reached by taking the number of days between the mid-point selected, March 3, 2014, and the date on which this Report and Recommendation is filed, September 30, 2016 (942 days), and multiplying it by the daily interest rate of $2.42 ($9,796.97 [wages owed under NYLL] x 0.09 [yearly interest rate] = $881.73 [yearly interest] / 365 days = $2.42 per day interest).

[10]     Plaintiff may not recover for unpaid minimum or overtime wages under both the FLSA and NYLL. See Pinzon v. Paul Lent Mech. Sys. Inc., 11 Civ. 3384 (DRH) (WDW), 2012 U.S. Dist. LEXIS 134122, at *9 (E.D.N.Y. Aug. 21, 2012), adopted by 2012 U.S. Dist. LEXIS 134125 (E.D.N.Y. Sept. 19, 2012) (the plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages

In order to fully understand the calculation of Plaintiff's damages, as determined by the Court and calculated in Appendix I, several parameters must be explained.

## A.    Effect Of Wages/Pay Received

As noted earlier, Defendants occasionally paid Plaintiff various amounts— either in cash or by check—but did not explain how these payments were allocated in terms of wages and/or tips.  <u>See</u> SAC, ECF No. 47 ¶¶ 108-109.  These unspecified payments totaled approximately $3,268.00.  <u>See</u> Pl's Aff., ECF No. 62 ¶¶ 23, 28, 31, 52.  Plaintiff did not provide specific dates for which these sporadic payments were made, or for what period of work such payments covered.

In order to account for the monies paid by Defendants, the Court assumes that two-fifths of the $3,268.00, or $1,307.20, was paid to Plaintiff in 2013 (accounting for November and December 2013) and three-fifths of the $3,268.00, or $1,960.80, was paid in 2014 (accounting for January, February and March

---

under the FLSA and the NYLL).  Moreover, as Defendants were required to comply with both federal and New York State law, I calculate the wages to which Plaintiff is entitled as required by the NYLL, which provides for the same, or a greater, hourly wage during all relevant times.  <u>See</u> 29 U.S.C. § 218(a), <u>Rodriguez</u>, 2011 U.S. Dist. LEXIS 120478, at *2 ("[A] plaintiff may recover under the [minimum wage] statute which provides the greatest amount of damages."); <u>Wicaksono v. XYZ Corp.</u>, 10 Civ. 3635 (LAC) (JCF), 2011 U.S. Dist. LEXIS 55771, at *4 (S.D.N.Y. May 2, 2011), <u>adopted by</u> 2011 U.S. Dist. LEXIS 55734 (S.D.N.Y. May 24, 2011) (same).

2014).  These amounts are deducted from the total minimum wages due to Plaintiff.

## B.    Misappropriated Tips

According to Plaintiff, once she realized in mid-January 2014 that she was unable to rely on Defendants to track and pay her the tips she garnered during shifts, she began to keep contemporaneous records of same.  See Pl's Aff., ECF No. 62 ¶ 47.  As such, Plaintiff has submitted exact records of the tips she received from customers (but was not paid by Defendants) for half of January 2014, and all of February and March 2014.  Id. ¶¶ 49-50.

For November and December 2013, as well as half of January 2014, Plaintiff does not have records of her tips.  Therefore, in order to reasonably calculate the amount of misappropriated tips due, the Court calculated the average weekly tips Plaintiff received using the ten (10) complete weeks of records Plaintiff submitted. In order words, from January 22, 2014 through March 29, 2014 (i.e., the time period for which Plaintiff provided records), which covers ten complete weeks (Sunday through Saturday), Plaintiff received an average of $236.02 in tips per week.  This weekly average was subsequently multiplied by 8.5 (i.e., the number of weeks in November and December 2013), and divided by 2 (i.e., November and December) to reach the tip total awarded to Plaintiff for November and December 2013, respectively.  Similarly, the weekly average was multiplied by 2 (i.e., the

number of weeks in January for which Plaintiff did not have records) and added to the 2 weeks of records Plaintiff did submit in order to reach the tip total awarded for January 2014.

The tip total awarded for February and March 2014 reflect the sum of the daily tips totals provided by Plaintiff in support of her motion.  See Pl's Aff., ECF No. 62 ¶¶ 49-50.

## C.  Effect Of Settlement With Former Defendant Adam Smith

As noted earlier, Plaintiff initially named Adam Smith as a defendant.  See Amended Complaint, ECF No. 8.  Plaintiff quickly reached a settlement with Mr. Smith.  See 2/9/2015 Order; ECF No. 40.

According to Plaintiff's memorandum of law in support of her motion, the settlement agreement with Smith totaled $7,500.00 and was allocated as follows:

| | |
|---|---|
| Unpaid Wages: | $1,209.27 |
| FLSA Liquidated Damages: | $1,209.27 |
| NYLL Liquidated Damages: | $1,209.27 |
| Attorney's Fees: | $2,500.00 |
| Costs: | $1,372.19 |

See Plaintiff's Memorandum of Law ("Pl's Memo."), ECF No. 59-1, p. 22.  At Plaintiff's request, see id., the amounts allocated to unpaid wages and FLSA and

NYLL liquidated damages have been deducted[11] from the amounts awarded to Plaintiff in this Report and Recommendation.

### D.    Calculations

In light of the above, it is respectfully recommended that Defendants be **ordered** to pay Plaintiff **$3,357.00** for unpaid minimum wages for hours worked up to forty hours per week; **$496.88** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$496.88** for unpaid spread-of-hours premiums; **$5,446.21** in unlawfully withheld tips, and **$9,796.96** in liquidated damages.  After adjusting these awards to take into account the settlement agreement previously reached with former defendant Adam Smith, the damages amount totals **$15,966.38**.[12]

## V.    ATTORNEYS' FEES AND COSTS

In addition to damages, Plaintiff requests that the Court award attorneys' fees.[13]

---

[11]    As only one set of liquidated damages is permissible, these deductions will be combined and the liquidated damages total reduced by same.

[12]    The calculations taking into account the adjustment related to Plaintiff's settlement agreement with Adam Smith are provided in Appendix I.

[13]    In the SAC, Plaintiff also sought costs, which are recoverable under both the FLSA and NYLL.  See 29 U.S.C. § 216(b); NYLL § 198(4).  As mentioned earlier, see Section IV(C), supra, Plaintiff reached a settlement with former defendant Adam Smith, see 2/9/2015 Order; ECF No. 40.  The settlement agreement allocated a portion of the settlement funds to account for costs incurred in this matter.  See Pl's Memo., ECF No. 59-1, p. 22; see also Section IV(C), supra.

Both the FLSA and NYLL entitle prevailing plaintiffs to an award of reasonable attorneys' fees.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  The same attorneys' fee analysis applies in determining fees under both statutes.  See Santillan, 822 F. Supp. 2d at 299-300.  The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This calculation, known as the "lodestar" method, "provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  Id.

In reviewing a fee application and calculating a lodestar, the court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."  Santillan, 822 F. Supp. 2d at 299.  A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 190 (2d Cir. 2008).  "If any expenditure of time was unreasonable, the court should exclude these hours from the calculation."  Santillan, 822 F. Supp. 2d at 299 (citing Hensley, 461 U.S. at 434

---

Bearing this in mind, in her motion for default judgment, Plaintiff does not seek costs.  See Pl's ECF No. 59-1, p. 25.

& <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d Cir. 1994)). The court should also exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999).

A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. <u>See</u> <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983). These time records must be sufficiently detailed and contemporaneous, "specify[ing], for each attorney[,] the date, the hours expended, and the nature of the work done." <u>King v. JCS Enters., Inc.</u>, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (quoting <u>N.Y. State Ass'n for Retarded Children</u>, 711 F.2d at 1148). "If such records are inadequate the Court may reduce the award accordingly." <u>Santillan</u>, 822 F. Supp. 2d at 299 (quoting <u>Vernon v. Port Auth. of N.Y. & N.J.</u>, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002)). District courts have broad discretion to determine a fee award. <u>See</u> <u>Farbotko v. Clinton Cnty. of N.Y.</u>, 433 F.3d 204, 209 (2d Cir. 2005). In determining a reasonable hourly rate, the court may consider hourly rates employed in prior cases within the district. <u>Id.</u>; <u>Arbor Hill</u>, 522 F.3d at 190; <u>Easterly</u>, 2014 U.S. Dist. LEXIS 180999, at *7 ("To assess the reasonable rate, the Court considers the prevailing market rates for similar services

by lawyers of reasonably comparable skill, experience and reputation.") (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).

Here, Plaintiff seeks a total of $84,672.00 in attorneys' fees for work performed by attorneys Gail I. Auster and Chloe Liederman, and paralegal Ellen Mayer.

### 1. Reasonable Hourly Rate

In support of her claim for attorneys' fees, Plaintiff submits a declaration from Plaintiff's counsel, Gail Auster, Esq., detailing Ms. Auster's educational background and legal experience. See generally Declaration of Gail Auster in Support of Attorneys' Fees ("Auster Decl."), ECF No. 61. According to her declaration, Ms. Auster is a principal at the labor and employment law firm of The Law Offices of Gail I. Auster & Associates, P.C. (the "Firm"), id. ¶ 15; she has practiced law since 1975 after receiving her law degree from Case Western Reserve University Law School, id. ¶ 12; she received an L.L.M. in Labor Law from New York University Law School and a Master's Degree in Social Work from Columbia University in 1984, id.; among other positions, she was employed by the National Labor Relations Board from 1987-1992 and as the General Counsel of the New York City Mayor's Office of Labor Relations from 2002-2004, id. ¶ 14; at the Firm, she represents corporations and individual high level management clients in federal and state court litigation involving, inter alia, Title

VII employment discrimination, ERISA, FMLA, FLSA, ADA, and ADEA matters, id. ¶ 15.  Ms. Auster seeks an hourly fee of $575.  Id. ¶ 18.

Ms. Liederman did not submit a declaration, but according to Ms. Auster, Ms. Liederman received an undergraduate degree from Cornell University and a law degree from Brooklyn Law School in unspecified years.  Id. ¶ 18.  The Firm does not appear to have a website, which might have corroborated this information, but the New York State Unified Court System attorney look-up system confirms that Ms. Liederman attended Brooklyn Law School and was admitted to the New York State Bar in 2014.[14]  Ms. Auster's declaration does not contain a requested hourly rate for Ms. Liederman, but according to the Firm's time records, see ECF No. 60-15, and Plaintiff's Memorandum of Law in support of her motion, see ECF No 59-1, p. 24, Ms. Liederman seeks an hourly fee of $300.

Plaintiff seeks an hourly fee of $225 for Ms. Mayer, who received her undergraduate degree in Paralegal Studies from Berkeley College and has twenty-one years of experience as a paralegal.  See Auster Decl., ECF No. 61 ¶¶ 22-23.

In assessing the reasonableness of an attorney's hourly rate, the Court must consider whether "the requested rates are in line with those prevailing in the

---

[14]    See https://iapps.courts.state.ny.us/attorney/AttorneySearch#search_result (last visited September 26, 2016).  Although the Court will accept Ms. Liederman's qualifications as attested to by Ms. Auster, the Court notes that the better practice would have been for Ms. Liederman to submit a declaration on her own behalf.

community for similar services by lawyers of reasonably comparable skill, expertise and reputation." I.B. v. N.Y.C. Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). The "relevant community" is "usually the forum district." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 96 (2d Cir. 2004). "Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, 12 Civ. 5737 (ILG) (JMA), 2014 U.S. Dist. LEXIS 141455, at *18 (E.D.N.Y. Sep. 15, 2014).

In support of her request, Plaintiff argues that, although "courts in this Circuit tend to regard default judgment actions as relatively simply legal matters . . . the instant case has been much more difficult . . . due to [] McErlain's continual evasion, obfuscation and deceit," and "additional work [regarding] the true ownership of the [B]ar[s]." See Pl's Memo., ECF No. 59-1, p. 23. From the Court's perspective, this action is still an unchallenged default that should not require a high level of experience to litigate.

Although Ms. Auster's qualifications and approximately forty years of experience litigating employment actions are impressive, the Court finds the

requested hourly rate excessive in light of the prevailing rates for FLSA-based cases in this District, see Hui Luo v. L&S Acupuncture, P.C., 14 Civ. 1003 (BMC), 2015 U.S. Dist. LEXIS 56236, at *3 (E.D.N.Y. Apr. 29, 2015) (citations omitted) ("It is now well established . . . that the prevailing hourly rate for partners in th[e Eastern D]istrict ranges from $300.00 to $400.00."), and the relative ease of this FLSA litigation, see Barbu v. Life Ins. Co. of N. Am., 12 Civ. 1629 (JFB) (SIL), 2015 U.S. Dist. LEXIS 21874, at *6 (E.D.N.Y. Feb. 24, 2015) ("[I]n light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.") (internal quotations omitted). Instead, the Court recommends an hourly rate of $450 for Ms. Auster. See De Ping Song v. 47 Old Country, Inc., 09 Civ. 5566 (LDW) (SIL), 2015 U.S. Dist. LEXIS 177623, at *8 (E.D.N.Y. Oct. 1, 2015), adopted by 2016 U.S. Dist. LEXIS 52277 (E.D.N.Y. Mar. 31, 2016) (awarding attorney with twenty-five years of experience litigating employment actions $425 per hour in FLSA- and NYLL-based matter); Rosendo v. Everbrighten Inc., 13 Civ. 7256 (JGK) (FM), 2015 U.S. Dist. LEXIS 50323, at *23-24 (S.D.N.Y. Apr. 7, 2015), adopted by 2015 U.S. Dist. LEXIS 98309 (S.D.N.Y. July 27, 2015) (awarding partner at employment law firm with

approximately thirty years of experience $400 per hour in FLSA- and NYLL-based matter).

With respect to Ms. Liederman and Ms. Mayer, the hourly rates sought are similarly out-of-line with rates awarded for FLSA-based cases in this District. Beyond the fact that Plaintiff does not provide background information on Ms. Liederman, she has only been admitted to the New York State Bar for approximately two years.  Bearing this in mind, the Court recommends an hourly rate of $150 for Ms. Liederman, see Gomez v. El Rancho De Andres Carne De Tres Inc., 12 Civ. 1264 (CBA) (SMG), 2014 U.S. Dist. LEXIS 45580, at *33 (E.D.N.Y. Mar. 11, 2014), adopted by 2014 U.S. Dist. LEXIS 43988 (E.D.N.Y. Mar. 31, 2014) (awarding $175 per hour for an associate practicing for approximately 3 years in FLSA- and NYLL-based matter); Jemine v. Dennis, 901 F. Supp. 2d 365, 384 (E.D.N.Y. 2012) (finding hourly rate of $150 reasonable for junior associate with two years of experience practicing law); see also Rios v. Louya Corp., 14 Civ. 6800 (GHW), 2015 U.S. Dist. LEXIS 138507, at *10 (S.D.N.Y. Oct. 8, 2015) ("Courts typically award rates in the range of $125-$215 to associates with three years of experience or less."); Black v. Nunwood, Inc., 13 Civ. 7207 (GHW), 2015 U.S. Dist. LEXIS 56609, at *16 (S.D.N.Y. Apr. 30, 2015) ($200 per hour for associate with three years of experience and $150 for one year of experience in FLSA- and NYLL-based matter), and an hourly rate of $100 for

Ms. Mayer, see D'Annunzio v. Ayken, Inc., 11 Civ. 3303 (WFK) (WDW), 2015 U.S. Dist. LEXIS 120795, at *6-7 (E.D.N.Y. Sept. 10, 2015), adopted by 2015 U.S. Dist. LEXIS 120793 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from . . . $70 to $100 per hour for paralegals."); Hernandez v. Prof'l Maintenance & Cleaning Contractors, Inc., 13 Civ. 2875 (FB) (LB), 2014 U.S. Dist. LEXIS 179808, at *17-18 (E.D.N.Y. Sept. 10, 2014), adopted by 2015 U.S. Dist. LEXIS 2026 (E.D.N.Y. Jan. 8, 2015) (reducing a request for paralegal fees from $130 per hour to $75 per hour), which fall in line with the prevailing rates in this District.

Accordingly, it is respectfully recommended that the District Judge reduce the hourly rate of Ms. Auster, Ms. Liederman, and Ms. Mayer to $450, $150, and $100, respectively.

### 2. Reasonable Number Of Hours

Next, I consider whether the 237.3 hours[15] for which Plaintiff's counsel requests compensation is reasonable. See ECF No. 60-15.

---

[15] The number of compensable hours sought by Plaintiff is inconsistent. According to the Firm's time records, see ECF No. 60-15, Plaintiff's counsel expended 237.3 hours; however, according to Plaintiff's Memorandum of Law, Plaintiff's counsel expended 250.5 hours, see Pl's Memo., ECF No. 59-1, p. 24. The reason for this inconsistency is unclear. In any event, the Court relies on the Firm's time records, as they are a contemporaneous statement of hours expended.

In support of her claim for attorneys' fees in this regard, Plaintiff submits contemporaneous time records reflecting work completed by Ms. Auster, Ms. Liederman, and Ms. Mayer on this matter from May 2014 through March 2015.[16] Id. According to these records, Ms. Auster, Ms. Liederman, and Ms. Mayer expended the following numbers of hours: 32.5, 203.8 and 1, respectively.

"The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 424 (quoting S.Rep. No. 94-1011, p. 6 (1976)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 444); N.Y.S. Ass'n for Retarded Children, 711 F.2d at 1146.

Based on this Court's careful review of Plaintiff's counsel's time records, it appears that counsel billed excessive, unnecessary and severable hours for tasks completed. For ease of reference, the Court's concerns with counsel's request for compensation can be grouped into four general topics: (1) tasks related to former defendant Adam Smith, with whom Plaintiff settled; (2) drafting of discovery

---

[16] The instant motion was filed in March 2016; the record does not explain why Plaintiff's counsel's time records stop as of March 2015.

demands; (3) drafting of the original Complaint; and (4) drafting of the first and second default judgment motions.

First, counsel expended approximately 21.3 hours of time handling tasks specifically related to former defendant, Adam Smith.[17]  Given that Plaintiff settled her claims against Mr. Smith and allocated part of that settlement to fees, work specifically attributable to this defendant is already the subject of compensation. Plaintiff does not explain why, nor does the Court accept that, this time has any reasonable relation to the outcome sought against the current Defendants, and thus, is excluded.  See Herrara v. 12 Water St. Gourmet Café, 13 Civ. 4370 (JMF) (RLE), 2016 U.S. Dist. LEXIS 25565, at *38 (S.D.N.Y. Feb. 29, 2016), adopted by 2016 U.S. Dist. LEXIS 44239 (S.D.N.Y. Mar. 31, 2016) ("Where a[ fee] applicant's time is 'not reasonably necessary to the outcome,' the Court should 'reduce the time for which compensation is awarded.'") (quoting Tucker v. City of New York, 704 F. Supp. 2d 347, 354 (S.D.N.Y. 2010)).

Second, counsel expended approximately 10.4 hours of time drafting discovery requests[18] just weeks after the original Complaint was filed, despite the fact that the current Defendants had not yet been served nor had they appeared (thus, precluding the possibility of a Fed. R. Civ. P. 26(f) conference).  As the

---

[17]      See, e.g., 8/8/2014, 8/11/2014 and 8/14/2014 Entries.

[18]      See 7/24/2014, 7/28/2014 and 7/30/2014 Entries.

current Defendants never appeared, these requests could not have been served and the record does not show why they were drafted.[19]  Thus, the Court likewise excludes this time.  See Herrara, 2016 U.S. Dist. LEXIS 25565, at *38.

Third, according to counsel's time records, between May 2014 and July 2014, the Firm collectively spent 79.9 hours drafting the original Complaint.[20]  See ECF No. 60-15.  At least eight of the time entries related to the drafting of the original Complaint, totaling 23.4 hours, describe the work completed merely as "research."[21]  Id.  Similarly, counsel's records show 6 hours expended to file the original Complaint on the Court's electronic filing system,[22] a task that should have taken no more than fifteen minutes to a half hour and been performed by a paralegal or at paralegal hourly rates.  Simply stated, the billing of nearly 80 hours of work for the original Complaint, which is largely pro forma and by no means complex, is excessive.

---

[19]  These discovery requests must have been drafted with an intent to serve them on the current Defendants, as opposed to Adam Smith, as the entries related to same were completed prior to the filing of the Amended Complaint, where Mr. Smith was named as a defendant for the first time.

[20]  This time does not take into account counsel's consultations with Plaintiff prior and during the drafting of the original Complaint when, presumably, counsel learned of the facts underlying the case.

[21]  See, e.g., 6/2/2014, 6/3/2014 and 6/4/2014 Entries.

[22]  See 7/8/2014 Entry.

Fourth, between November 2014 and March 2015, counsel expended no less than 77.3 hours drafting Plaintiff's first and second default judgment motions. Beyond the fact that the expenditure of this many hours was excessive for the relatively simple nature of the claims made, the motions were deficient in various ways and required the Court to raise with counsel the omissions leading to counsel withdrawing said motions, see 2/13/2015 Order; 7/29/2015 Order, and redrafting/refiling same, see ECF No. 59.

To account for counsel's vague and excessive billing, after accounting for specific hours excluded as described above, the Court finds that the overall compensable time should be reduced by 40%. See, e.g., McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 (2d Cir. 2006) (affirming district court's 35% reduction in attorneys' fees on the basis of severable hours and vagueness); Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and other deficiencies in the billing records"); Mister Softee, Inc. v. Konstantakakos, 15 Civ. 4770 (SJ) (SMG), 2016 U.S. Dist. LEXIS 84034, at *18 (E.D.N.Y. June 27, 2016), adopted by 2016 U.S. Dist. LEXIS 106482 (E.D.N.Y. Aug. 11, 2016) ("As a result of the accumulation of vague and unreasonable billing entries, the large amount of time spent on a relatively straightforward matter, and this Circuit's requirement that a court consider the

amount of time reasonably spent, I conclude that a reduction of counsel's hours by 40% is reasonable."); Herrara, 2016 U.S. Dist. LEXIS 25565, at *38 (reducing fee request by 40% in FLSA default judgment proceeding based on, inter alia, "the relative simplicity of the underlying dispute"); Barbu, 2015 U.S. Dist. LEXIS 21874, at *12 (33% reduction due to vagueness alone); Caban v. Emple. Sec. Fund of the Elec. Prods. Indus. Pension Plan, 10 Civ. 389 (SMG), 2015 U.S. Dist. LEXIS 158292, at *24-25 (E.D.N.Y. Nov. 23, 2015) (33% reduction due to vagueness alone); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd on other grounds, 38 F.3d 651 (2d Cir. 1994).

Therefore, in light of the reasonable hourly rate and reduction in hours recommended above, it is respectfully recommended that the District Court award Plaintiff a total of **$22,938.00** in attorney's fees.[23]

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend the District Judge **enter** default judgment against Defendants and **order** that Defendants are jointly and severally liable for the following total damages award of $38,904.38, reflecting

---

[23]    The calculations relevant to Plaintiff's attorneys' fees award are provided in Appendix I.

$15,966.38 in compensatory damages and $22,938.00 in attorney's fees, and **order** Defendants to pay $2,279.64 in pre-judgment interest up through and including, September 30, 2016, and an additional $2.42 per day for each day thereafter until judgment is entered.

## VII. OBJECTIONS

This Report and Recommendation will be filed electronically and a copy sent by mail to Defendants Amekk Corp., A&O Corp., 52 5th Avenue Corp.,[24] and Anthony McErlain.[25]  Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Eric N. Vitaliano, at 225 Cadman Plaza East, Brooklyn, New York 11201, within seventeen days of filing.  Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Dated:      September 30, 2016
              Brooklyn, New York

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate
Judge

---

[24]    As per the New York State Department of State Corporation look-up system, a copy of this Report and Recommendation will be mailed to Amekk Corp. and 52 5th Avenue Corp. at 52 5th Avenue, Brooklyn, New York 11217, and A&O Corp. at 428 Bergen Street, Brooklyn, New York 11217.

[25]    A copy of this Report and Recommendation will be mailed to Mr. McErlain at 200 21st Street, Apartment 4A, Brooklyn, New York 11232, which is the address at which he was served.  See ECF No. 51.

**Minimum Wage Calculation For The First Forty Hours Worked Per Week**

| Dates | Weeks Worked | Hours Worked Per Week | Statutory Minimum Wage | Required Weekly Pay For First 40 hours (Statutory Min Wage * 40 hours) | Total Wages Required For First 40 Hours (Weekly Required Pay * Weeks Worked) | Wages Received | Total Wages Owed For First 40 Hours (Total Wages Required - Wages Received) |
|---|---|---|---|---|---|---|---|
| 11/01/2013 – 12/30/2013 | 8.5 | 42 | $7.25 | $290.00 | $2,465.00 | $1,307.20 | $1,157.80 |
| 12/31/2013 – 3/31/2014 | 13 | 42 | $8.00 | $320.00 | $4,160.00 | $1,960.80 | $2,199.20 |
| **Total** | | | | | | | **$3,357.00** |

**Minimum Wage Plus Premium Overtime Pay Calculation For Over Forty Hours Worked Per Week**

| Dates | Weeks Worked | Hours Worked Per Week | Overtime Hours Per Week (Hours Worked Weekly - 40) | Overtime Rate (Statutory Minimum Wage * 1.5) | Overtime Weekly Pay Owed (OT Rate * OT Hours) | Total Overtime Wages Owed (Weekly OT Owed * Weeks Worked) |
|---|---|---|---|---|---|---|
| 11/01/2013 – 12/30/2013 | 8.5 | 42 | 2 | $10.88 | $21.75 | $184.88 |
| 12/31/2013 – 3/31/2014 | 13 | 42 | 2 | $12.00 | $24.00 | $312.00 |
| **Total** | | | | | | **$496.88** |

**Spread-Of-Hours Damages (under the NYLL)**

| Dates | Weeks Worked | Days Per Week That Pl Worked > 10 Hours | Total Days > 10 Hours (Weeks * Days Per Week) | Statutory Minimum Wage | Total S.O.H. Wages Owed (Days * Statutory Minimum Wage) |
|---|---|---|---|---|---|
| 11/01/2013 – 12/30/2013 | 8.5 | 3 | 25.5 | $7.25 | $184.88 |
| 12/31/2013 – 3/31/2014 | 13 | 3 | 39 | $8.00 | $312.00 |
| **Total** | | | | | **$496.88** |

**Misappropriated Tips**

| Dates | Total Amount Of Unpaid Tips Owed |
|---|---|
| Nov-13 | $1,003.00 |
| Dec-13 | $1,003.00 |
| Jan-14 | $1,137.42 |
| Feb-14 | $1,173.56 |
| Mar-14 | $1,129.23 |
| **Total** | **$5,446.21** |

**Liquidated Damages**

| Dates | Statutory Basis for Liquidated Damages | Unpaid Min. Wages On ≤ 40 Hours Worked Per Week | Unpaid Min. & OT Wages On > 40 Hrs Worked Per Week | Unpaid Tips | Unpaid Spread-Of-Hours Premium | % of Liquidated Damages Allowed | Total Liquidated Damages Owed |
|---|---|---|---|---|---|---|---|
| 11/01/2013 – 12/30/2013 | FLSA | $1,157.80 | $184.88 | n/a | n/a | 100.00% | $1,342.68 |
| 12/31/2013 – 3/31/2014 | FLSA | $2,199.20 | $312.00 | n/a | n/a | 100.00% | $2,511.20 |
| 11/01/2013 – 12/30/2013 | NYLL | n/a | n/a | $2,006.00 | $184.88 | 100.00% | $2,190.88 |
| 12/31/2013 – 3/31/2014 | NYLL | n/a | n/a | $3,440.21 | $312.00 | 100.00% | $3,752.21 |
| **Total** | | | | | | | **$9,796.96** |

| Global Damages Award | | | | | |
|---|---|---|---|---|---|
| Minimum Wage Calculation For The First Forty Hours Worked Per Week | Premium Overtime Pay Calculation For Over Forty Hours Worked Per Week | Spread-Of-Hours Damages (under the NYLL) | Liquidated Damages | Unpaid Tips | Total |
| $3,357 00 | $496 88 | $496 88 | $9,796 96 | $5,446 21 | <u>$19,593.92</u> |

| Adjusted Global Award (Taking Into Account Prior Settlement) | | | | | |
|---|---|---|---|---|---|
| Minimum Wage Calculation For The First Forty Hours Worked Per Week  (-$1,209 27) | Minimum Wage Plus Premium Overtime Pay Calculation For Over Forty Hours Worked Per Week | Spread-Of-Hours Damages (under the NYLL) | Liquidated Damages (-$2,418 54) | Unpaid Tips | Total |
| $2,148 00 | $496 88 | $496 88 | $7,378 42 | $5,446 21 | <u>$15,966.38</u> |

| Attorneys' Fees Award | | | | | | |
|---|---|---|---|---|---|---|
| | Hours Sought | Hours Excludable Based On Hours Expended On Smith/Unnecessary Discovery | Compensable Hours (Notwithstanding % Deduction) | Hours Taking Into Account Across-The-Board % Deduction (Compensable Hours * (-40%)) | Reasonable Hourly Rate | Total |
| Gail Auster | 32 5 | 7 7 | 24 8 | 14 88 | $450 00 | $6,696 00 |
| Chloe Liederman | 203 8 | 24 | 179 8 | 107 88 | $150 00 | $16,182 00 |
| Ellen Mayer | 1 | 0 | 1 | 0 6 | $100 00 | $60 00 |
| Total | | | | | | <u>$22,938.00</u> |

| Attorneys' Fees Award | Adjusted Global | Total |
|---|---|---|
| $22,938 00 | $15,966 38 | <u>$38,904.38</u> |